[File No. 217 Cr.]

## THE STATE OF NORTH DAKOTA, Respondent, v. HENRY GULKE, Appellant

(38 NW2d 722)

Opinion filed August 9, 1949.

*F. J. Graham,* for appellant.

*P. O. Sathre,* Attorney General and *D. R. Crabtree,* State's Attorney, for respondent.

MORRIS, J. The defendant Henry Gulke was charged in an information filed by the State's Attorney of Dickey County, North Dakota with the commission of the crime of manslaughter in the first degree, under the provisions of paragraph one, Section 12–2717, RCND 1943. This section provides that homicide is manslaughter in the first degree "When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor;".

The trial court instructed the jury on manslaughter in the first degree and also on the included offense of manslaughter in the second degree. The jury returned a verdict of guilty of manslaughter in the second degree and fixed the defendant's sentence at two years in the State Penitentiary. From a judgment rendered pursuant to the verdict the defendant appeals. He also challenged the sufficiency of the evidence by a motion for a new trial.

The sufficiency of the evidence involves the facts and we therefore give it first consideration. Section 12–2719, Rev Code ND 1943, describes manslaughter in the second degree as "Every killing of one human being by the act, agency, procurement, or culpable negligence of another which, under the provisions of this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide."

The credibility of the witnesses and the weight to be given to their testimony are matters for the jury. State v. Thompson, 68 ND 98, 277 NW 1. The question now is whether the evidence is sufficient to warrant the jury in returning a verdict of guilty of manslaughter in the second degree when considered in the light of the rules of criminal law and the instructions of the court.

On July 2, 1948 John Johnson was riding a bicycle in a westerly direction on a graveled highway about five miles west of Oakes, North Dakota, when he was overtaken, struck, and killed by a car proceeding in the same direction driven by the defendant, Henry Gulke. The state contended that at the time of the collision the defendant was guilty of the misdemeanor of reckless

driving as defined by Section 39–0803, Rev Code ND 1943, and was therefore guilty of manslaughter in the first degree. The verdict returned by the jury of manslaughter in the second degree indicates that they found the defendant guilty of culpable negligence rather than the misdemeanor of reckless driving.

The defendant contends that the death of John Johnson was the result of accident and misfortune, while the defendant was acting lawfully with usual and ordinary caution and without any unlawful intent. The car involved in the accident was one the defendant had borrowed from Fred Kranda. It was a 1936 Ford which the defendant had driven two or three times previously around the town of Oakes. The defendant, who is corroborated by his brother who was a passenger, testified that he was driving about forty miles an hour and as he approached Johnson slowed down to about thirty-five. Johnson was proceeding along the right side of the highway and as the defendant turned out to go around him the car jack-knifed or suddenly crossed over to the right and struck the man and the bicycle. At the time this took place the defendant's car was passing the bicycle at a distance of about four or five feet when it jumped to the right. The defendant was apparently temporarily paralyzed by the horror of the accident and as he puts it "froze to the wheel". He did nothing until his brother shouted to him to stop the car. He then applied the brakes. By that time the car had traveled about four hundred eighty feet from the point of impact. The body of the deceased had been carried the entire distance. The bicycle had been dropped after being carried about one hundred eighty-five feet. The road had a graveled surface and was rough at the point where the accident occurred.

The owner of the car testified that the steering wheel was loose and the brakes were none too good. The defendant testified that he had no difficulty in driving the car until the time of the accident although he noticed that the steering wheel was a little loose.

The state produced a witness who was approaching the scene of the accident from the opposite direction from which the Gulke car was traveling and saw what occurred from a distance

of a little less than half a mile. He estimated the speed of the car at fifty or sixty miles an hour and further testified that Gulke did not turn out to the left until after he hit the man on the bicycle.

As we review the entire record we cannot say that it was not within the province of the jury to determine from the evidence that the defendant was guilty of culpable negligence in the operation of the car at the time of the accident and that his negligence was the direct and proximate cause of the death of John Johnson. The evidence is sufficient to support the verdict.

The state introduced in evidence nine photographs taken at the scene of the accident. The defense objected on the ground that they had a tendency to arouse the prejudice of the jury. The court overruled the objection. His action in this respect is pressed on this appeal as error especially with regard to Exhibit A, which shows the body of the deceased lying in the road beside the car. This photograph is material to the charge set forth in the information. It was admitted as a part of the state's case. The defendant had plead not guilty and at the time of the introduction had no testified or in any way admitted the homicide. While not pleasing to the eye it is not particularly gruesome. It is visual evidence of the homicide and of the car which was the instrument of death and was properly received in evidence. Underhill's Criminal Evidence, 4th Ed § 117; State v. Burrell, 112 NJL 330, 170 A 843; People v. Becker, 300 Mich 562, 2 NW2d 503, 139 ALR 1171; Bassinger v. State, 142 Neb 93, 5 NW2d 222.

The defendant specifies as error the fact that the court in the absence of request instructed the jury on second degree manslaughter. We deem it proper for the court to give such an instruction. The South Dakota statute is identical with ours in its definition of manslaughter in both first and second degree. In State v. Denevan, 49 SD 192, 206 NW 927, in discussing a similar challenge, made the following comment which is applicable here. "Simply because a negligent act is made a misdemeanor, and may render one guilty of manslaughter in the first degree, if the death of another is caused by such negligent act, does not render such negligent act less culpable, nor prevent

its being the basis of a prosecution for manslaughter in the second degree. If the jury was satisfied beyond a reasonable doubt that the negligence of the defendant was a misdemeanor, it might have found him guilty of manslaughter in the first degree, but, if in doubt as to the criminal character of the negligent acts, it might still be satisfied, and believe that such acts were culpable, and there is no inconsistency in finding the homicide in the second degree of manslaughter instead of the first degree. Under the facts of this case, where the crime in the first degree depended upon negligence, the proof of such negligence necessarily included the proof of negligence in establishing manslaughter in the second degree for culpable negligence."

The defendant next contends that the court gave an insufficient instruction as to the meaning of culpable negligence. The instruction complained of is as follows. "Therefore, if the State has failed to establish that at the time the defendant's automobile struck and killed the deceased, John Johnson, the said Henry Gulke was engaged in the commission of a misdemeanor, yet if the State has proved to your satisfaction beyond a reasonable doubt that the death of the said John Johnson was due to the culpable negligence of the defendant, that is, that the defendant was operating his automobile without due care, in a reckless and heedless manner, with utter disregard for the lives and limbs of persons upon the highway, at a rate of speed greater than was reasonable and proper, having regard to the width, condition and use of the highway at the time, and that such culpable negligence was the direct and proximate cause of the death of the said John Johnson, then I charge you that the State would have proved the defendant guilty of the crime of manslaughter in the second degree, and it would be your duty to find the defendant guilty of the crime of manslaughter in the second degree."

The courts of various jurisdictions are in disaccord as to the meaning of the word culpable when used in manslaughter statutes. See annotation 161 ALR 10; Cyclopedia of Automobile Law and Practice, Blashfield, Permanent Edition, Sec 5387; Berry, Automobiles 7th Ed, § 5.364.

Section 12–0104, Rev Code ND 1943 contains definitions of terms pertinent to crimes and punishments. Under that section negligence is said to import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns. Under the general provisions of the code we find Section 1–0116, Rev Code ND 1943 which provides that "There are three degrees of negligence mentioned in this code, namely, slight, ordinary, and gross. Each of the last two includes any lesser degree or degrees."

The following Section 1–0117, defines the degrees of negligence as follows: "Slight negligence shall consist in the want of great care and diligence, ordinary negligence, in the want of ordinary care and diligence, and gross negligence, in the want of slight care and diligence."

Culpable negligence is not defined and is not mentioned otherwise than in the manslaughter statute. As applied to the operation of a motor vehicle it implies a total lack of care that is well defined in the challenged instruction as being "in a reckless and heedless manner, with utter disregard for the lives and limbs of persons upon the highway." The court also uses other terms in his definition of culpable negligence, but the terms of his definition are all conjunctive and cumulative and though some may be unnecessary they do not frustrate that part of the instruction just quoted. We find no prejudicial error in this instruction.

The jury could have found from the evidence that while the defendant was driving a car with a loose steering wheel at a rate of speed of fifty to sixty miles per hour over a rough road in the daytime he overtook and struck the deceased before turning to the left to pass him. Such a determination of the facts would warrant the jury in reaching the conclusion that the defendant was culpably negligent and guilty of manslaughter in the second degree.

The final specification of error which we will consider is that of misconduct on the part of the state's attorney in his opening argument to the jury wherein he said, "I think that it is against the law to drive an automobile with defective equipment."

Whereupon the defendant's counsel said, "I object to that line of argument as not proper argument. There is no testimony here to that effect, and it is immaterial to anything at this time."

The state's attorney, Mr. Crabtree, then replied, "I believe the defendants introduced testimony themselves that their equipment was defective."

The court then directed, "You may proceed, Mr. Crabtree."

The statement of the state's attorney was improper in that it was a misstatement of the law, an attempt to state law not pertinent to the issues before the jury, and an attempt on part of counsel to state the law which if it had been pertinent to the issues would be within the province of the court and not counsel. Had the jury found the defendant guilty of manslaughter in the first degree which required as an ingredient of the offense that the defendant was engaged in the commission of a misdemeanor, the statement might be deemed prejudicial. But the jury did not so find. It found him guilty of manslaughter in the second degree and in doing so must have determined that he was culpably negligent. That term was defined to the jury in the instruction already discussed. In view of the instructions given and the verdict rendered it appears that the remark of the state's attorney could not have affected the jury's determination and was therefore not prejudicial. The judgment appealed from is affirmed.

NUESSLE, Ch. J., and BURKE, J., and BRODERICK, District J., concur.

BURR, J., did not participate.

CHRISTIANSON, J. (dissenting). I do not believe that it can be said that the defendant in this case had a fair trial. I believe that the remarks made by the state's attorney in the course of his argument to the jury, which were duly objected to by counsel for the defendant, constituted prejudicial error. As stated in the majority opinion it is the contention of the State that at the time of the collision the defendant was guilty of the misdemeanor of reckless driving as defined by Sec 39–0803, ND Rev Code 1943, and was therefore guilty of manslaughter in the first degree;

and it was the contention of the defendant that the death of John Johnson was the result of accident and misfortune. In its instructions to the jury the court outlined the contentions of the parties as follows:

"The claim of the State is that the killing of the said John Johnson by the defendant, Henry Gulke, was unlawful and while the defendant, Henry Gulke, was engaged in the commission of a misdemeanor; and in this connection, the State claims that the defendant was driving his automobile unlawfully, carelessly and heedlessly, and with wilful and wanton disregard to the rights and safety of others, without due caution and circumspection, and at a speed and in a manner so as to endanger, or likely to endanger, other persons using the highway, and at a rate of speed greater than was then and there reasonable and proper, having regard to the width, and usual rules of the road. That these acts of the defendant constituted a misdemeanor or misdemeanors, and therefore that the defendant is guilty of manslaughter in the first degree.

"The claim of the defendant, on the other hand, is, that the striking of John Johnson by the defendant's automobile, and the death of the said John Johnson, was a mere accident and misfortune, and was entirely excusable, and what is known in law as excusable homicide.

"The defendant denies that he was driving at a rate of speed greater than was lawful; denies that he was at all negligent in the management, driving or operation of the automobile, and denies that the death of the said John Johnson was due to any unlawful act of his, or any culpable negligence of his; and denies that he was driving in a reckless or careless manner, without due regard to the safety of others upon the highway."

The court among others, also, gave the following instructions to the jury:

"I charge you, gentlemen of the jury, that it is the law of the of the State of North Dakota that no person shall operate a motor vehicle (and by the term "motor vehicle" is meant an automobile) on the public highways of this state at a rate of speed greater than is reasonable and proper, having regard to the

width, condition and use of the highway at the time, and the general and usual rules of the road, or so as to endanger property or the life or limbs of any person.

"The first question, then, for you to determine is: At the time that the automobile driven by the defendant, Henry Gulke, struck and killed the deceased, John Johnson, was the defendant violating any of the provisions of the law in reference to operating or driving his automobile upon the highways in the County of Dickey and State of North Dakota, under the law regulating the driving and operation of automobiles as I have just defined it to you; that is, was he at the time driving his automobile upon the public highways in the County of Dickey and State of North Dakota at a rate of speed greater than was reasonable and proper, having regard to the width, condition, and use of the highway at the time, and the general and usual rules of the road, or so as to endanger property, or the life or limbs of any person?

"I charge you that if at the time that the defendant's car struck and killed John Johnson, the said defendant was violating any of the provisions of the automobile law of this state, as I have just defined it to you, he would be guilty of a misdemeanor, because our statute and law provides that any person violating any of the provisions of the statute in reference to the driving and operating of automobiles shall, upon conviction, be found guilty of a misdemeanor; and, as I have heretofore defined it to you, a misdemeanor is any crime or offense not punishable by imprisonment in the penitentiary."

"If the State has proved, to your satisfaction beyond a reasonable doubt, that the defendant was culpably negligent in the driving of his car, as I have heretofore defined culpable negligence to you, and if you further find that he was at the time engaged in the commission of a misdemeanor or misdemeanors, and further find that the defendant's culpable negligence was the direct and proximate cause of the death of the said John Johnson, then it would be your duty to find the defendant guilty of manslaughter in the first degree."

The accident occurred on a public highway about five miles west of Oakes in Dickey County in this state shortly before five

o'clock in the afternoon of July 2nd, 1948. Only three persons saw the accident: the defendant, his brother Otto who was a passenger in the car operated by the defendant, and one Dunn who was approaching from the opposite direction driving a truck. Dunn testified that he first observed the car driven by the defendant at a distance of one mile or three-fourths of a mile and continued to observe it until the accident occurred. He estimated the speed of the car at between 50 and 60 miles an hour and stated as a basis for estimating the speed that it was "the dust and the way the car appeared." He testified that he observed Johnson riding the bicycle and that Johnson was going "only about as fast as a good walking man could have walked." He testified that he saw the collision, that at the time the collision occurred he was about a half mile away and that it took him from three to five minutes to reach the place where the accident occurred.

The defendant testified that he was 28 years of age and had driven a car since he was 18 years of age. That the car involved in the accident did not belong to him but that he had borrowed it from one Fred Kranda of Oakes. That he had driven the car two or three times around the town of Oakes for short periods and that he had never had any trouble with it. That he had no trouble with the car the evening the accident occurred prior to the time of the collision. He testified that he first observed the man riding the bicycle at a distance of about one-fourth of a mile and that at that time he was driving the car at the rate of about 40 miles an hour but that as he approached the man on the bicycle he slowed down to 35 miles an hour and was traveling at that rate at the time the accident occurred. He testified that the car gave him no trouble and steered all right until the accident occurred. On his direct examination, in response to a question to tell the jury what he did after he saw Mr. Johnson on the bicycle, the defendant said: "Well, I saw Mr. Johnson on the bicycle, and I turned out for him and got to the side of him, just about to the side of Mr. Johnson I hit some loose gravel or ruts which threw my car into Mr. Johnson." On his cross examination the defendant testified:

"As I was going by him, my car jackknifed, and that's when I hit him. . . .

"Q. When you started out from Oakes, did you notice that it steered loose?

A. Well, it steered all right when I was driving until at this point.

Q. You didn't notice that it was loose before that point?

A. Well, it was a little loose.

Q. Well, didn't you realize that with that loose gravel and a loose steering gear, that you had to be especially careful?

A. Well, I didn't know there was a loose steering apparatus on this car.

Q. How did you know then that there was a loose steering wheel?

A. How did I know?

Q. Yes. How did you know the steering gear was faulty?

A. Well, I didn't.

Q. Haven't you testified that the steering gear was faulty?

A. I said I didn't know what made the car go over, it was the steering wheel or something. When I hit the loose gravel, the car took off."

The defendant's brother, Otto, testified that the defendant was driving at the rate of speed of about 40 miles an hour when they observed the man riding the bicycle about a quarter of a mile away and that his brother reduced the speed of the car as he was approaching the bicycle. He stated that his brother turned over to the left before he started to pass Mr. Johnson. When asked to tell what happened to the car at the time of the collision or immediately before he answered, "Well, as we was about even, maybe a little bit ahead of him, why, the car just hit something, and then she flew over to the left-hand side, struck him, and she drug him along."

Kranda, the owner of the car, was called as witness by the defendant. Kranda testified that the defendant came to see him in the afternoon of July 2nd and asked for permission to use the car and that he (Kranda) gave him permission to use it. When asked as to the condition of the car he stated that the

steering wheel was loose and that the brakes were not too good. He testified that he did not tell the defendant that there was anything wrong with the car. He said "I never thought of it." On cross examination he reiterated that he had not informed the defendant about any defect in the car. On such cross examination he further testified as follows:

"Q. He (Henry Gulke) would have had an opportunity to know something about the car from the times he had driven it before, wouldn't he?

A. If you don't drive it fast, it don't bother at all. If you drive 15 or 20 miles an hour, it's perfectly all right.

Q. If you drive faster than that, do you get a shimmy?

A. No, if you drive fast and hit loose gravel or something, it will throw the wheels.

Q. In what way does it throw the wheels? Does it set them?

A. It will throw them one way or the other, it all depends on the road. The car is light and she'll bounce. It'll go either way.

Q. Does it ever go both ways?

A. Well, not at one time.

Q. What I was trying to get at, Mr. Kranda, is, do the wheels, after they bounce off out of position, do they get set so they continue in that course, or do they go that way a while and back in another direction for a while?

A. You can turn them back.

Q. Well, now, then, Mr. Gulke used this car with your consent and your permission?

A. Yes sir.

Q. Did you realize that that was a pretty dangerous thing to let him take that car out in the country without warning him as to the defective condition of the car?

A. Well, I just never thought of it.

Q. Well, you realize, don't you, that it is against the law to operate a motor vehicle upon a public highway that is in a defective condition?

A. Yes sir."

As is stated in the majority opinion the state's attorney in his argument to the jury said: "I think that it is against the law to drive an automobile with defective equipment."

Whereupon defendant's counsel said: "I object to that line of argument as not proper argument. There is no testimony here to that effect, and it is immaterial to anything at this time."

State's attorney then replied: "I believe the defendants introduced testimony themselves that their equipment was defective."

The court then stated: "You may proceed, Mr. Crabtree."

The statement of the state's attorney was clearly improper, for reasons which are aptly pointed out in the majority opinion. It will be noted that the trial court made no ruling on the objection. There was no caution by the court to the jury to disregard the improper statement of the state's attorney, nor was there any statement to that effect in the charge to the jury. After defendant's counsel had objected to the improper statement in the argument, the state's attorney proceeded to argue further in support of the propriety of the statement. He said, "I believe the defendants introduced evidence themselves that their equipment was defective." Immediately following this statement the court said, "You may proceed Mr. Crabtree." This statement by the court was in effect a ruling that the statement of the state's attorney to which defendant's counsel had objected was unobjectionable and that the state's attorney might proceed with the argument which he was making. The statement of the state's attorney that was challenged by the objection was not a comment on evidence but a definite expression as to the law. There was no general instruction that it was the duty of the court to instruct the jury as to the law to be applied to the case and that it was the duty of the jury to take the law as stated by the court and abide thereby and apply it to the facts in the case as such facts were disclosed by the evidence. 4 Reid's Branson Instructions to Juries, (3rd ed) § 2537; 5 Reid's Branson Instructions to Juries, (3rd ed) § 3444.

As has been noted the court instructed the jury:

"The first question, then, for you to determine is: At the time that the automobile driven by the defendant, Henry Gulke, struck and killed the deceased, John Johnson, was the defendant violating any of the provisions of the law in reference to operating or driving his automobile upon the highways in the County of Dickey and State of North Dakota, under the law regulating the driving and operation of automobiles as I have just defined it to you; that is, was he at the time driving his automobile upon the public highways in the County of Dickey and State of North Dakota at a rate of speed greater than was reasonable and proper, having regard to the width, condition, and use of the highway at the time, and the general and usual rules of the road, or so as to endanger property, or the life or limbs of any person?"

The court further instructed the jury that if they found from the evidence that the defendant was so operating or driving his automobile at the time he struck and killed Johnson he committed a misdemeanor and it was the duty of the jury to find him guilty of manslaughter in the first degree. Presumptively the jury obeyed the instructions of the court. They determined the first question, i. e. the question which the court stated they must first determine, in favor of the defendant. By their verdict they acquitted him of manslaughter in the first degree and found that he did not operate or drive his car in such manner as would constitute reckless driving.

The court instructed the jury that: "the State does not have to establish that the defendant, Henry Gulke, intended to kill John Johnson because intent is not an essential element of the crime of manslaughter. The law says that the culpable negligence of a defendant supplies the element and takes the place of criminal intent."

We have this situation then that the jury after finding that the defendant was not guilty of reckless driving at the time he struck Johnson and therefore not guilty of manslaughter in the first degree, under the court's instructions, was required to proceed and determine whether he was otherwise culpably negligent. The jury had before them the evidence that had been offered by the defendant as to the defective condition of the car

and the assertion of the state's attorney in his cross examination of Kranda that it is against the law to operate a motor vehicle that is in a defective condition upon a public highway and the argument of the state's attorney that it is against the law to operate an automobile with defective equipment upon the highway (without regard to whether the party operating the car has any knowledge or notice of such defects) and the instructions of the court that under the law intent is immaterial and that culpable negligence "supplies the element and takes the place of criminal intent."

It does not appear improbable that the jury in arriving at their verdict considered and might have been influenced by the statement of the state's attorney, and that they believed that the defendant violated the law and must be held to be culpably negligent because he drove a car with defective equipment although he had no actual knowledge of the defects which the owner of the car mentioned in his testimony. It is agreed that the argument of the state's attorney was improper and if so, it was of course error for the court to ignore and in effect overrule the objection that had been made by defendant's counsel, and to permit the improper and erroneous statement to remain uncorrected and to direct that the state's attorney proceed with the argument which he was making. A presumption of prejudice arises from an error which might operate to the injury of the party against whom it was committed. McPherrin v. Jones, 5 ND 261, 65 ND 685; Ferderer v. Northern P. R. Co. 75 ND 139, 26 NW2d 236. The record in this case does not disclose that anything was done to cure or obviate the error that had been committed.