STATE of North Dakota, Plaintiff and Appellee,

v.

Lawrence P. MILLER, Defendant and Appellant.

Cr. No. 900253.

Supreme Court of North Dakota.

Feb. 21, 1991.

*nied,* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971).

Brian D. Grosinger (argued), Asst. States Atty., Mandan, for plaintiff and appellee.

Lester J. Schirado (argued), Mandan, for defendant and appellant.

MESCHKE, Justice.

Lawrence Paul Miller appealed his jury conviction of attempted murder, arguing that either evidentiary errors or failure to instruct on the effect of extreme emotional disturbance required a new trial, and that lack of evidence required an acquittal. We affirm.

■ We must view the evidence in the light most favorable to the jury verdict. *State v. Olson*, 372 N.W.2d 901 (N.D.1985). We summarize the case in that light.

During the week of Christmas in 1989, Miller separated from his wife, Lisa. She remained in the couple's apartment with their children. Miller took the family's videocassette recorder (VCR) with him and moved in with a friend.

Lisa's friend, Kerry Kessler, brought a new VCR to Lisa's apartment during the evening of December 29, 1989. Kessler waited there with the children's baby-sitter for Lisa to return from her annual office party. Kessler left Lisa's apartment about 1:30 a.m. when Miller telephoned Lisa about coming to talk to her. After Miller arrived, he discovered the new VCR, accused Lisa of infidelity, and began arguing with her. Miller took the new VCR outside, threw it on the pavement, and mangled it. Miller then drove to the home of Lisa's parents where he roused his father-in-law to discuss his marital breakup. About 4:00 a.m., after telephoning his

daughter, Lisa's father brought Miller back to the apartment.

Shortly after his return, Miller induced Lisa to call Kessler to come over "to talk." Before Kessler arrived, another argument broke out between Lisa and Miller. When Miller got out his shotgun, Miller and Lisa struggled for possession of the gun. Miller was holding the gun when a knock at the door was heard. Lisa shouted, "run, he has got a gun."

Kessler knocked on the door and it began to swing open. When he heard Lisa shout, Kessler shut the door, turned, and ran down the stairway, looking back over his left shoulder. Miller shot at Kessler as he ran and birdshot struck the left side of Kessler's face.

Miller reloaded the shotgun, followed Kessler outside, and shot at Kessler a second time, this time missing him. A passing motorist took Kessler to the hospital for treatment of his injuries. Kessler's injuries resulted in scarring of his face, some embedded shot, and a partial loss of his hearing.

Lisa telephoned the 911 emergency number from a neighbor's apartment. Police were dispatched to the scene. Miller also telephoned 911. According to the dispatcher who took his call, Miller named Kessler as an intruder, describing both Kessler and his vehicle. After Miller was in custody of an arresting officer on the way to the police station, Miller said, "I wish I would have killed the son of a bitch."

Miller was charged with violating NDCC 12.1–06–01(1) and 12.1–16–01(1) by attempted murder.[1] A jury found Miller guilty.

---

1. NDCC 12.1–06–01(1) says:

A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be.

NDCC 12.1–16–01(1) says:
A person is guilty of murder, a class AA felony, if he:
a. Intentionally or knowingly causes the death of another human being;
b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; or
c. Acting either alone or with one or more other persons, commits or attempts to commit treason, robbery, burglary, kidnapping, felonious restraint, arson, gross sexual imposition, or escape and, in the course of and in furtherance of such crime or of immediate flight

Miller appealed his conviction, arguing five questions:

1. Did the trial court fairly enforce sequestration of witnesses?
2. Did the trial court improperly admit photographs of the victim?
3. Was the prosecution's nondisclosure of the tapes of the 911 calls prejudicial?
4. Did the trial court improperly fail to instruct on extreme emotional disturbance?
5. Was there sufficient evidence for the conviction?

## EVIDENTIARY QUESTIONS

### 1. Sequestration

■ Before opening statements were made, Miller requested sequestration of witnesses. The trial court granted the request and directed counsel that it was "incumbent upon you to instruct your witnesses that there is a sequestration order in effect." Yet, Miller complains that the prosecution's witnesses "continued to converse with each other" and that "no further action was taken by the [trial court] to monitor the same."

NDREv 615 directs a trial court to order witnesses excluded from the courtroom during the taking of testimony, except as each testifies, at the request of a party. Application of this sequestration rule, derived from FREv 615, is mandatory.

At the end of the testimony of each witness (except that of Miller himself and that of Lisa, his former wife), the trial court instructed the witness about sequestration. Miller has not shown how or when any witness disobeyed the sequestration order, or that the trial court failed to act on any request to enforce it. On this record,

we conclude that the trial court fairly enforced the sequestration order.

### 2. Photographs

■ Two photos of Kessler's wounds, taken three days after the shooting, were received into evidence and displayed to the jury over Miller's objections. Because the prosecution had Kessler testify and show the scar on his cheek to the jury, Miller objected that the pictures were unnecessary and "had absolutely no probative value." Because the pictures "depicted the victim in a bloody gory state three days after the happening," Miller objected that use of the pictures was prejudicial and "solely for the purpose of inflaming the passions and prejudices of the jury." On appeal, Miller argues that use of the pictures made the trial unfair because they lacked probative value and were highly prejudicial.

The prosecution responds that the seriousness of Kessler's wound became important when, in his opening statement to the jury, Miller's attorney characterized the injury as a "slight graze." The prosecution argues that the pictures were "legitimately probative" to disprove the mischaracterization of Kessler's injuries as a "slight graze."

The trial court controls admission and exclusion of evidence. NDREv 104 and 1008. Ordinarily, all relevant evidence is admissible. NDREv 402. But even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice" or other evidentiary considerations. NDREv 403. However relevant, depictions of gory details might well be excluded from evidence

therefrom, he, or another participant, if there be any, causes the death of any person; except that in any prosecution under this subsection in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:

(1) Did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid the commission thereof; and

(2) Was not armed with a firearm, destructive device, dangerous weapon, or other weap-

on which under the circumstances indicated a readiness to inflict serious bodily injury; and

(3) Reasonably believed that no other participant was armed with such a weapon; and

(4) Reasonably believed that no other participant intended to engage in conduct likely to result in death or serious bodily injury. Subdivisions a and b shall be inapplicable in the circumstances covered by subsection 2. For a charge of attempted murder, these two statutes must be read together.

by the trial court if unnecessary for any proof purpose.

■ The use and admission of photographs in criminal trials, like most evidence, rests largely with the discretion of the trial court, even when the photographs may have the additional effect of exciting the emotions of the jury. *State v. Ohnstad*, 359 N.W.2d 827, 839–40 (N.D.1984) (In a trial for negligent homicide of a child, the trial court did not abuse its discretion by admitting photographs "depicting in color the child's skull after the scalp had been deflected back during the autopsy"); *State v. Iverson*, 187 N.W.2d 1, 36–38 (N.D.1971) (In a murder trial, the trial court did not abuse its discretion by admitting unpleasant photographs of the victims that showed the badly deteriorated condition of their bodies before the autopsy, when the photos aided the pathologist in testifying). Even gruesome pictures are admissible for a proper proof purpose.

These pictures of Kessler's wounds, taken three days after the shooting, show the extent of his injuries more clearly than the six-month-old scar that he bore at the trial. While not pleasing to the eye, they are not particularly horrifying. *See State v. Gulke*, 76 N.D. 653, 38 N.W.2d 722, 725 (1949). According to testimony, these photos fairly depicted the condition of Kessler's wounds at the time they were taken. They were useful to the jury in weighing other evidence and arguments about the seriousness of Kessler's injuries from the shooting. We conclude that the trial court did not abuse its discretion in admitting these photographs of the victim's injuries.

### 3. Discovery

■ In his defense, Miller testified that he was shooting at an intruder to protect his family, denied attempting to kill anyone, and denied identifying the "intruder" as Kessler to the 911 dispatcher. In rebuttal, the prosecutor sought to impeach Miller by offering the tape of his phone call to the 911 dispatcher. Miller objected that the tape had not been produced by the prosecution during pretrial discovery. The prosecutor then withdrew the evidentiary

offer of the tape and the jury did not hear it.

Nonetheless, Miller argues that the prosecution's failure to disclose the tapes of both 911 calls upon his discovery request before trial was prejudicial because he was "taken by surprise and unable to properly prepare for his defense." The prosecution concedes that the tapes were not made available to Miller's attorney during "open file" disclosures after Miller initiated discovery, attributing the failure to oversight because the tapes were not intended to be used as evidence and were kept elsewhere.

Pretrial discovery of evidence in criminal cases is controlled by NDRCrimP 16. When evidence should have been disclosed but is withheld, NDRCrimP 16(d)(2) authorizes the trial court to use one or more of various remedies. The trial court may order further disclosure, grant a continuance, prohibit the evidentiary use of undisclosed material, relieve a requesting party from making a disclosure, or enter any other order in the interests of justice. Here, Miller only objected to use of the undisclosed tape as rebuttal evidence. Miller sought no other remedy from the trial court for the discovery violation.

The nondisclosure was not as serious as Miller makes out. Both dispatchers who took the 911 calls were disclosed as witnesses. Miller received the written report of the dispatcher who took his call, and even entered that report into evidence. Since he made no specific request to the trial court for further relief, Miller's generalized claim of prejudice is not enough to merit a new trial.

■ When a defendant is not significantly prejudiced by a discovery violation, that defendant cannot claim that any substantial right was affected. *State v. Rasmussen*, 365 N.W.2d 481, 483 (N.D.1985). *See also State v. Shipton*, 339 N.W.2d 87, 89 (N.D.1983). As it turns out, Miller was not prejudiced by this violation and it was harmless error. NDRCrimP 52(a). Miller objected and the jury never heard the undisclosed 911 tape. We do not understand

what more the trial court could have done under these circumstances.

## JURY INSTRUCTIONS

██ Miller filed four written requests for jury instructions with the trial court, and all of them were given. No instruction on extreme emotional disturbance was among them.

Miller argues on appeal that he orally requested, and was entitled to, an appropriate instruction on "extreme emotional disturbance" as a reasonable excuse to reduce the seriousness of his attempted murder offense. NDCC 12.1–16–01(2) authorizes mitigation of a class AA murder to a class A murder if the homicide was caused "under the influence of extreme emotional disturbance for which there is reasonable excuse." [2]

The prosecution argues that an instruction on "extreme emotional disturbance" was never properly requested, and does not concede that it was orally requested. The State points out that the statute defining attempt itself mitigates the seriousness of the offense by reducing an attempted class AA felony to a class A felony. *See* NDCC 12.1–06–01(3).[3] For that reason, the prosecution argues that more mitigation would not be allowable. Since only mitigation, not exoneration, is affected, the prosecution argues that any defect in the instructions about "extreme emotional disturbance" cannot be obvious error.

If Miller requested such an instruction, this record does not show it. All we have to go on is the representation of Miller's attorney on appeal that his request and the

trial court's denial were made orally, even though not shown in the record.

NDRCrimP 30(b) directs that requested instructions must be in writing. In *State v. Marks*, 452 N.W.2d 298 (N.D.1990), we held that when the defendant's attorney does not submit his requested jury instructions in writing, the defendant has no basis for challenging a trial court's refusal to give that instruction. That ruling applies here.

Marital circumstances may contribute to an "extreme emotional disturbance for which there is reasonable excuse" that would allow a jury to mitigate the seriousness of a homicide. *State v. Huber*, 361 N.W.2d 236, 239–41 (N.D.1985). Even so, it may be questionable today to what extent, if any, mitigation through "extreme emotional disturbance" can be claimed by a jealous spouse who shoots the suspected lover of the other spouse. *See People v. Chevalier*, 131 Ill.2d 66, 136 Ill.Dec. 167, 171, 544 N.E.2d 942, 946 (1989) (Verbal communication of adultery is insufficient provocation, "[w]hatever may be the outer limits of the general rule that only the discovery of the parties in the act of adultery, or immediately before or after the act, will suffice as provocation"); *Burger v. State*, 231 S.E.2d 769, 771, 238 Ga. 171 (1977) ("[A]ny idea that a spouse is ever justified in taking the life of another—adulterous spouse *or* illicit lover—to prevent adultery is uncivilized. This is murder; and henceforth, nothing more appearing, an instruction on justifiable homicide may not be given"). Compare prior opinions collected in Annotation, *Spouse's Confes-*

---

2. NDCC 12.1–16–01(2) says:

    A person is guilty of murder, a class A felony, if the person causes the death of another human being under circumstances which would be class AA felony murder, except that the person causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse must be determined from the viewpoint of a person in his situation under the circumstances as he believes them to be. An extreme emotional disturbance is excusable, within the meaning of this subsection only, if it is occasioned by substantial provocation, or a serious event, or situa-

tion for which the offender was not culpably responsible.

3. NDCC 12.1–06–01(3) says:

    Criminal attempt is an offense of the same class as the offense attempted, except that (a)' an attempt to commit a class AA felony is a class A felony and an attempt to commit a class A felony is a class B felony; and (b) whenever it is established by a preponderance of the evidence at sentencing that the conduct constituting the attempt did not come dangerously close to commission of the crime, an attempt to commit a class B felony shall be a class C felony and an attempt to commit a class C felony shall be a class A misdemeanor.

sion of *Adultery As Affecting Degree of Homicide Involved In Killing Spouse Or His Or Her Paramour*, 93 ALR3d 925 (1979); 40 Am.Jur.2d *Homicide* § 65 (1968). But, this case does not call upon us to resolve any such question. Miller's claimed defense of mitigation for "extreme emotional disturbance" was not effectively presented to the trial court. Since the question was not preserved for review, we do not answer it.

## EVIDENCE SUFFICIENCY

■ Miller argues here, as he did in the trial court in moving for judgment of acquittal, that he did not act knowingly and intentionally in shooting Kessler. He argues, as he testified, that he "attempted to ward off what he thought was a would-be intruder." He embellishes this argument by maintaining that he was "emotionally upset and was unable to restrain himself properly" because he believed Kessler was "surreptitiously stealing his wife Lisa's love and affection from him." These are factual arguments about Miller's intent.

■ Our power of review of the facts on appeal is different from, and more circumscribed than, the power of the jury in determining the facts. As we pointed out early in this opinion, we must view the facts in the light most favorable to the jury verdict. *Olson*, 372 N.W.2d 901. In an appeal challenging the sufficiency of the evidence for a criminal conviction, our role is limited to determining whether there was competent evidence that allowed the jury to draw a reasonable inference of guilt and that fairly warranted a conviction. *State v. Carson*, 453 N.W.2d 485 (N.D.1990). We conclude that the evidence here was sufficient for the jury to reasonably infer that Miller knowingly and intentionally attempted to murder Kessler.

Miller admits shooting at Kessler in the apartment house and again outside. The only question is his intent, a subject uniquely suited to jury determination rather than appellate review. "[A] state of mind is rarely proven directly and must usually be inferred from conduct and circumstances." *State v. Wiedrich*, 460 N.W.2d 680, 688 (N.D.1990) (Meschke, Justice, dissenting). Miller seeks to justify the shooting as defense of his home and family during a time of emotional distress over the breakup of his marriage. The jury did not credit that defense and we cannot redetermine Miller's credibility.

According to his former wife, Miller lured Kessler to the apartment and waited for him with a shotgun. Miller shot at Kessler twice, once in the apartment house and again outside, both times while Kessler was fleeing. Just before the second shot, Miller called out, "You son of a bitch." After his arrest, Miller stated to an officer, "I wish I would have killed the son of a bitch." This evidence fairly warranted Miller's conviction of attempted murder.

We find no error that made the trial unfair or that requires a new trial. The evidence was sufficient for the jury to find Miller guilty of attempted murder. We affirm Miller's conviction.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring in result.

I concur in the majority opinion except insofar as the discussion of "extreme emotional disturbance" and the implication of the citations in that discussion are concerned. It is clear that whether there exists a reasonable explanation or excuse for the actor's mental condition cannot be resolved by categorization of conduct but must be decided directly on the facts of each case. *State v. Huber*, 361 N.W.2d 236 (N.D.1985) [citing to the Model Penal Code and Commentaries (Revised Commentaries, 1980)]. *See also State v. Trieb*, 315 N.W.2d 649 (N.D.1982). If we are to decide that issue on a case-by-case basis, citations to decisions which appear to categorize conduct and apply that categorization as a matter of law, not on the facts of each case, serve no useful purpose where we purport to not decide the issue.