2003 ND 39

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Timothy Gene KLOSE, Defendant and Appellant.**

**No. 20010309.**

Supreme Court of North Dakota.

March 5, 2003.

Rehearing Denied March 26, 2003.

Frederick R. Fremgen, State's Attorney, Jamestown, ND, for plaintiff and appellee.

Kropp Law Offices (argued by Eric P. Baumann), Jamestown, ND, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]  Timothy Gene Klose appeals from a judgment of the Southeast Judicial District Court and from the court's denial of his motion for mistrial and two motions for a new trial.  On appeal, Klose argues that the district court erred in concluding there was insufficient evidence to prove he lacked criminal responsibility, in admitting the State's exhibits into evidence, in improperly communicating with the jury, and in concluding that the jury did not render a compromised verdict.  We affirm.

I

[¶ 2]  Klose was charged with burglary and with the murder of his neighbor, Raymond Schultes, in the early morning of March 22, 2001.  Schultes' body had been found on the lower level of their apartment complex, at the bottom of a stairway leading to the laundry room.  On October 25, 2001, a jury convicted Klose of murder.

Both Klose and Schultes resided in the four-plex apartment unit in Jamestown. Klose rented an apartment on the upper level of the four-plex, and Schultes rented one on the lower level. The two men did not know each other.

[¶ 3] That Klose killed Schultes is not disputed; however, the facts that surround the killing are disputed. Klose raised an insanity defense at trial. Klose's expert witness, Dr. Joann Roux, testified at trial that after reviewing all police records and evaluating Klose, her opinion was that he was in a profoundly psychotic state at the time of the killing. Dr. Roux reports in her psychiatric evaluation of Klose that he told her he began drinking alcohol again in March 2001, after four months of sobriety. Klose told Dr. Roux he was consuming from one-half to a liter of vodka per day up until four days before the murder, when he stopped completely. After the murder, he tested negative to alcohol and all other drugs except marijuana. A small bag of marijuana was found in Klose's apartment after the murder.

[¶ 4] In her evaluation report, Dr. Roux stated Klose's insanity was caused by alcohol withdrawal delirium, an aftereffect of prolonged consumption of large amounts of alcohol followed by an abrupt cessation of consumption. She stated, in her opinion, at the time of the killing Klose was experiencing delirium tremens, which affected him to such an extent, his conduct was the result of either a loss or a serious distortion of his capacity to recognize reality.

[¶ 5] Klose did not take the stand at trial. Dr. Roux testified as to what Klose had told her in her interviews with him. Dr. Roux testified that Klose stated his hallucination began by God coming to him and telling him his twelve-year-old twin daughters were going to be used to clone perfect human beings. She testified Klose told her he believed he was in space and he and his brother Randy were saving the earth from a meteorite; however, he said that at one point he thought Randy was going to kill him and his daughters. Dr. Roux testified Klose told her it was at that time he remembered Randy coming to him in space, which was actually his apartment, and pounding on his door, saying, "Timmy, Timmy, come out. I am going to get you."

[¶ 6] Dr. Roux testified Klose told her he then went down to Schultes' apartment because he believed his brother Randy was in there. Dr. Roux testified that Klose told her he started pounding on Schultes' door, asking for Randy to come out. Dr. Roux testified that Klose told her he thought he heard his twin daughters crying in the apartment, and when he was unable to open Schultes' door, he went upstairs to his apartment and got his shotgun. Dr. Roux testified that Klose said he then went back down to Schultes' apartment, shot his way in, got into a struggle with Schultes, and shot him when Schultes was overpowering him. Dr. Roux testified Klose told her that he remembered seeing the man who he thought was his brother Randy on the floor and thinking he was dead. Dr. Roux testified that Klose said that when he realized he didn't know for sure whether Randy was dead, he went up to his apartment to get another gun, went back downstairs, and shot Schultes, again thinking he was Randy.

[¶ 7] Dr. Roux testified Klose told her that after he believed Randy was dead, he realized he would not be able to find his daughters, so he started dragging the body toward the laundry room because, he said, at that time he thought the laundry room contained a replicator machine that would bring Randy back to life. Dr. Roux testified Klose told her that when he heard voices, he went and hid in Schultes' apartment until he realized the voices were

those of police officers. Dr. Roux testified Klose told her that when the police arrived, he still thought he had killed Randy, and when he found out he had actually killed his neighbor and not his brother, he realized he must have been suffering from delirium tremens.

[¶ 8] At trial, the State's witness, Officer LeRoy Gross, who had examined the crime scene, testified that in Klose's apartment he had found a broken single shotgun, a pair of socks, a towel, and a pair of boxers, all of which were soiled by what appeared to him to be blood. Gross testified that in Klose's bathroom he had noticed the sink was fairly clean, but there were water drops around the sink with a pinkish residue to them, as though Klose had cleaned himself off at the sink. Gross also testified Klose told him that after his struggle with Schultes, he got another gun. Gross testified there was a discrepancy in Klose's story at that point. Gross testified he believes that after the struggle, Klose must have gone back upstairs, gotten a different shotgun, gone back to Schultes' apartment, and shot through the door. The first police officer on the scene, Officer Robert Schlenvogt, testified that when he arrived, Klose was fully dressed in clean clothing, as was depicted in an exhibit shown to the jury.

[¶ 9] Another witness for the State, Dr. George Mizell, North Dakota State Forensic Examiner, examined Schultes' body and issued the death certificate and autopsy report. Dr. Mizell testified the evidence from his examination showed there was only one fatal gunshot wound, which was to Schultes' head, yet other injuries on Schultes' body indicated a struggle had occurred. Dr. Mizell testified that at the time of the autopsy, he also examined the shotgun found in Klose's apartment. Dr. Mizell testified the shotgun was partially broken near the stock, there were red stains and a hair on it, and it likely was used to inflict the injuries present on Schultes' back, his head, and the left side of his face.

[¶ 10] In closing argument, the State argued that because there was only one fatal shot to Schultes' head, the struggle must have occurred prior to that shot. The State argued that after the struggle had occurred, Klose must have gone upstairs, taking the broken and bloody shotgun with him, changed his clothes, cleaned himself off with a towel, grabbed a different gun, and proceeded back downstairs to shoot Schultes in the head.

[¶ 11] During deliberation, the jury sent the court a note asking, "Have the physical and/or mental symptoms related to alcoholic withdrawal been used in this manner previously in a murder trial?" In chambers, the court discussed the question with the prosecutor and Klose's counsel, but the conversation was not recorded. What the court, the prosecutor, and Klose's counsel agreed upon in chambers to tell the jury is in dispute; however, both parties agreed the court could respond to the jury by written note. The court sent the jury a written response stating, "Very good question. I know of no legal precedent in North Dakota that I could put in a further jury instruction that would help you. Try to concentrate on the evidence you have before you." Copies of the answer were provided to the attorneys. The jury acquitted Klose on his charge of burglary, and convicted him of murder. At the sentencing hearing, Klose moved for a mistrial, alleging the district court's response to the jury's request for further instruction on North Dakota precedent regarding delirium tremens was not what had been agreed to in chambers. He also argued he had not been provided an opportunity to read the note before it was given to the jury.

[¶ 12] Klose appeals from the judgment of conviction, the district court's denial of his motion for mistrial, and the court's denial of his two motions for a new trial. Klose did not appeal the district court's denial of his motion for judgment of acquittal.

[¶ 13] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06(2). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–27–02(4). The appeal is timely under Rule 4(a), N.D.R.App.P.

## II

■ [¶ 14] Generally, granting a mistrial is "an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings of the trial which makes it evident that further proceedings would be productive of manifest injustice." *State v. Rodriguez*, 454 N.W.2d 726, 730 (N.D. 1990) (citing *State v. Carr*, 346 N.W.2d 723 (N.D.1984)).

■ [¶ 15] "When a problem arises during a trial, the party affected must bring the irregularity to the court's attention and seek appropriate remedial action." *State v. Wilson*, 1999 ND 34, ¶ 14, 590 N.W.2d 202 (citing *State v. Breding*, 526 N.W.2d 465, 472 (N.D.1995)). "[W]hen defense counsel moves for a mistrial because of the prejudicial effect of the defect or occurrence, counsel must ordinarily ask the trial court to give the jury a cautionary instruction in order to properly preserve the question for appellate review." *Rodriguez*, 454 N.W.2d at 730 (citing *State v. Welch*, 426 N.W.2d 550 (N.D.1988)). "The failure to request an instruction waives the objection to the allegedly prejudicial error." *Id.* In this case, Klose argues the irregularity lies in the note that the trial judge gave the jury. Klose's counsel was

made aware of the note while the jury was still impaneled. Klose did not move for mistrial until sentencing, which was after the jury had been excused and after the trial had ended. A mistrial must be declared before the trial is over and before the jury has been discharged. *See* N.D.R.Crim.P. 31(d) (a mistrial may be declared before the jury is discharged); N.D.R.Crim.P. 33, Explanatory Note ("The Rule does not affect the power of the court to declare a mistrial and order a new trial prior to the verdict or finding of guilty."); *Black's Law Dictionary* 1018 (7th ed.1999); *Neibauer v. Well*, 319 N.W.2d 143, 145 (N.D.1982). Klose's motion for mistrial was untimely. Klose subsequently moved for a new trial, based on the same grounds as his motion for a mistrial and on additional grounds.

## III

[¶ 16] Klose moved for a new trial, arguing that the district court erred in concluding there was insufficient evidence to prove he lacked criminal responsibility, in admitting the State's exhibits into evidence, in improperly communicating with the jury, and in concluding that the jury did not render a compromised verdict.

■ [¶ 17] In a motion for a new trial, the district court " 'must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses.' " *U.S. v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987) (quoting *U.S. v. Lincoln*, 630 F.2d 1313, 1316 (8th Cir.1980)); *Perry v. Reinke*, 1997 ND 213, ¶ 21, 570 N.W.2d 224.

"[W]hen a motion for a new trial is made and the reason given in support of the motion is [ ] there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide

whether or not the verdict is against the weight of the evidence."

*Perry,* at ¶ 21 (quoting *Okken v. Okken,* 325 N.W.2d 264, 269 (N.D.1982)). "A verdict is against the weight of the evidence when it is not supported by substantial evidence." *Id.* at ¶ 22 (citing *Olmstead v. First Interstate Bank,* 449 N.W.2d 804, 807 (N.D.1989)).

[¶ 18] When we review a motion for a new trial, we do not apply the same standard as the district court and will not re-weigh the evidence on appeal. *Rodriguez,* 812 F.2d at 417; *Perry,* 1997 ND 213, ¶ 21, 570 N.W.2d 224. Our only review is whether the district court abused its discretion. *Rodriguez,* at 417. "An abuse of discretion occurs when the district court is unreasonable, arbitrary, or unconscionable in rendering its decision." *Perry,* at ¶ 21.

[¶ 19] "In cases challenging the sufficiency of evidence to sustain a conviction we will not weigh conflicting evidence, nor judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to warrant a conviction." *State v. Hatch,* 346 N.W.2d 268, 277 (N.D.1984); *State v. Hartleib,* 335 N.W.2d 795, 797 (N.D.1983); *State v. Manke,* 328 N.W.2d 799, 805 (N.D.1982).

## A

[¶ 20] Klose argues there is insufficient evidence to sustain his conviction for murder, because the State failed to prove beyond a reasonable doubt that his lack-of-criminal-responsibility defense by reason of mental disease or defect did not exist at the time of the murder.

[¶ 21] Section 12.1–04.1–01, N.D.C.C., Standard for lack of criminal responsibility, states:

1. An individual is not criminally responsible for criminal conduct if, as a result of mental disease or defect existing at the time the conduct occurs:

   a. The individual lacks substantial capacity to comprehend the harmful nature or consequences of the conduct, or the conduct is the result of a loss or serious distortion of the individual's capacity to recognize reality; and

   b. It is an essential element of the crime charged that the individual act willfully.

2. For purposes of this chapter, repeated criminal or similar antisocial conduct, or impairment of mental condition caused primarily by voluntary use of alcoholic beverages or controlled substances immediately before or contemporaneously with the alleged offense, does not constitute in itself mental illness or defect at the time of the alleged offense. Evidence of the conduct or impairment may be probative in conjunction with other evidence to establish mental illness or defect.

[¶ 22] Lack of criminal responsibility is a "defense" to criminal conduct, and once it is raised by a defendant, the State must prove its nonexistence beyond a reasonable doubt. N.D.C.C. § 12.1–01–03(1)(e); *State v. Johnson,* 2001 ND 184, ¶ 13, 636 N.W.2d 391.

[¶ 23] The State argues Klose killed Schultes while he was sane and alleges his recollection of the night is a cover story he invented to explain his actions. At trial, the State argued in closing that Klose went back to his apartment after his initial altercation with Schultes, changed his clothes, cleaned the blood off of himself, and proceeded back to Schultes' apartment with the gun he then used to murder Schultes.

[¶ 24] Dr. Roux, Klose's expert witness, testified Klose told her during the examination that he dragged Schultes' body out of the apartment to the regenerating room, which was actually the laundry room, to regenerate his brother Randy so he could find out where his twin daughters were. At trial, the State presented evidence that Schultes' body was dragged past the laundry room. On cross-examination, the State elicited testimony from Dr. Roux that at the time she made her diagnosis of Klose's condition, she did not know the location of Schultes' body as it was found by the officers at the scene. She also testified on cross-examination that Klose had not told her and she had not known that bloody clothing was found in his apartment. The State questioned Dr. Roux on whether her diagnosis of Klose's mental condition would have been different had she known the location of Schultes' body or known that bloody clothing had been found in Klose's apartment. She testified, "I would certainly have liked to talk to Mr. Klose more about that. I don't know that that would necessarily change my opinion that he was still suffering from loss of [sic] serious distortion of his capacity."

[¶ 25] The State argues that whether or not Klose was insane at the time he broke into Schultes' apartment is irrelevant because the evidence produced at trial along with Dr. Roux's testimony was sufficient for the jury to find beyond a reasonable doubt Klose was sane at the actual moment he fired the fatal shot. The State argues the facts elicited at trial from Dr. Roux and the police officers' testimony concerning Klose's actions of cleaning himself off, dragging the body past the laundry room, and then hiding those details from Dr. Roux prove beyond a reasonable doubt that even if Klose had been insane during his first altercation

with Schultes, he nevertheless was sane at the time he fired the fatal shot.

[¶ 26] Even though Dr. Roux testified she might not have changed her diagnosis of Klose had she been aware of these facts, the State provided competent evidence allowing the jury to reasonably infer Klose was sane at the time of the killing, thus fairly warranting a conviction of murder. There is no reason not to conclude the jury believed the evidence supporting the verdict and disbelieved contrary or conflicting evidence.

B

[¶ 27] Klose argues the district court abused its discretion by admitting the State's exhibits into evidence. The district court admitted thirty of the State's exhibits, which consisted of a diagram of the four-plex, a calendar from Schultes' apartment, the entire door from Schultes' apartment, and twenty-seven photographs. The photographs were of Schultes, Klose, the apartment building, and the shotguns used in the murder. Except for exhibit number 25, a photograph of himself, Klose objected to all of the State's exhibits as not relevant, and even if they were, their relevance did not outweigh their unfair prejudice.

[¶ 28] Under N.D.R.Ev. 401, 402, and 403, a district court has broad discretion in admitting or excluding evidence. *State v. Steinbach*, 1998 ND 18, ¶ 9, 575 N.W.2d 193 (citing *State v. Carlson*, 1997 ND 7, ¶ 8, 559 N.W.2d 802). We will reverse the district court's decision in admitting evidence only if the court has abused its discretion by acting in an arbitrary, unconscionable, or unreasonable manner. *Id.* All relevant evidence is allowed; however, even relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." N.D.R.Ev. 403. A dis-

trict court has broad discretion in deciding whether evidence is relevant or not relevant. *Steinbach,* at ¶ 9. While N.D.R.Ev. 403 gives a district court the power to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, that power should be sparingly exercised. *State v. Ash,* 526 N.W.2d 473, 481 (N.D.1995) (citing *State v. Zimmerman,* 524 N.W.2d 111, 115 (N.D.1994)).

[¶ 29] Photographs may be admitted in criminal trials, at the district court's discretion, even if the photographs could have the additional effect of exciting the emotions of the jury. *Steinbach,* 1998 ND 18, ¶ 10, 575 N.W.2d 193. This Court has consistently held the same rule on the general admissibility of photographs of a victim in a homicide prosecution and has stated:

> "It appears to be a well-settled rule that photographs of the victim in a prosecution for homicide, duly verified and shown by extrinsic evidence to be faithful representations of the victim at the time in question, are, in the discretion of the trial court, admissible in evidence as an aid to the jury in arriving at a fair understanding of the evidence, condition and identification of the body, even though such photographs may have the additional effect of tending to excite the emotions of the jury."

*Id.* (quoting *State v. Iverson,* 187 N.W.2d 1, 37 (N.D.1971)). When photographs are relevant or aid a witness's testimony, even gruesome pictures are admissible for the purpose of offering proper proof. *State v. Miller,* 466 N.W.2d 128, 131–32 (N.D. 1991); *Iverson,* 187 N.W.2d at 37.

[¶ 30] The district court stated it balanced the issues of relevance versus prejudice as discussed in Rule 403, N.D.R.Ev., and concluded that because Klose shot Schultes in the head at very close range,

the more gruesome photographs that were relevant should be cropped before being allowed into evidence. The photographs were properly used to show the chain of events and the circumstances surrounding the murder. Pictures showing the placement of Schultes' body by the laundry room were relevant. The district court did not abuse its discretion in admitting these photographs.

C

[¶ 31] Klose argues in his brief to this Court that the district court improperly communicated with the jury in his absence and that communication in this case was harmful error, even if Klose's attorney assented to such a communication.

[¶ 32] Rule 43(a), N.D.R.Crim.P., contains a broad requirement that the defendant must be present at every stage of trial. *State v. Zimmerman,* 524 N.W.2d 111, 117 (N.D.1994). That the accused has a right to be present in the courtroom at every stage of his trial is one of the most basic rights guaranteed by the Confrontation Clause. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). A court errs when it communicates to the jury in the defendant's absence. *Allen,* 397 U.S. at 338, 90 S.Ct. 1057. On appeal, a constitutional error may be found harmless beyond a reasonable doubt. *Ash,* 526 N.W.2d at 481.

[¶ 33] The requirement under N.D.C.C. § 29–22–05, however, is distinct from the defendant's constitutional right to be present, and only addresses the defendant's presence after the jury has begun deliberation. It states:

> After the jurors have retired for deliberation, if they desire to be informed on a point of law arising in the cause, or to

have any testimony about which they are in doubt or disagreement read to them, they, upon their request, must be conducted into the courtroom by the officer who has them in custody. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the state's attorney and the defendant or his counsel, or after they have been called.

[¶ 34] Section 29–22–05, N.D.C.C., requires a court to respond to a jury question either in the defendant's presence in open court or after sufficient notice has been given to the defendant.

■■■ [¶ 35] Upon receiving the written question from the jury, the trial judge met with counsel in chambers and discussed the question presented by the jury. The court's recollection of the event was stated in its denial of Klose's motion for new trial. The court stated:

The Court met with counsel in chambers and discussed the question. The attorneys and the Court discussed whether any of them were aware of any legal precedent that would lead to a further jury instruction on that point. No one could think of any authority on either the North Dakota appellate or trial court level. The Court excused the attorneys. The Court then drafted an answer to the question as follows: "Very good question. I know of no legal precedent in North Dakota that I could put in a further jury instruction that would help you. Try to concentrate on the evidence you have before you." That answer was given to the bailiff who delivered it to the presiding juror. Copies of the answer were given to the attorneys.

[¶ 36] Klose's counsel agrees he stated at the time that he did not know of any precedent, but argues here he could perhaps have found some if he had had time to research. Klose's counsel did not ask the trial court for further time to research the question.

[¶ 37] Klose's counsel was present in chambers the entire time the trial judge discussed what type of answer would be appropriate to give to the jury, and Klose's counsel assented to the trial court's giving the jury an answer in writing.

[¶ 38] Klose's counsel stated in an affidavit that he did not receive the note until he was walking into the courtroom for the reading of the jury verdict. The jury verdict was given on the same day that the discussion in chambers occurred. Klose's counsel stated in his affidavit that the trial judge handed him a copy of the note that was given to the jury as he was walking into the reading of the verdict and he did not read it before the verdict was rendered because he assumed the note stated what they had agreed upon in chambers. Klose's counsel stated that he did not view the contents of the note until he returned to his office. Klose did not object to the court's response to the jury until the sentencing hearing.

[¶ 39] In this case, the defendant was present at every stage of the trial, including the conference in chambers, and Klose's counsel participated in the discussion of how to respond to the jury's question, agreed the trial judge could answer the jury by written note, and did not object to the note until five days after having received it during open court. Because Klose's counsel was given a full opportunity to participate in the discussion and in deciding the manner in which the answer would be given to the jury, we conclude, under N.D.C.C. § 29–22–05, the district court did not communicate improperly with the jury and did not err.

[¶ 40] At oral argument, Klose argued the trial court gave the jury an answer

that was not agreed to in chambers. He contends the trial court agreed not to use the word "precedent" in its written answer to the jury because that might indicate there was no precedent. Klose's brief to this Court on appeal, however, did not address this argument; therefore, we do not consider whether the answer to the jury was a fair statement of what was agreed to in chambers. *Vogel v. Roberts*, 204 N.W.2d 393, 394 (N.D.1973). Even if Klose had argued in his brief that the trial court misstated what was agreed upon in chambers, Klose's counsel did not request that the conversation be recorded, nor did he make any attempt to comply with N.D.R.App.P. 10 to preserve the defense's recollection of the conversation.

[¶ 41] Klose also argues that if the district court's note to the jury was a jury instruction, the district court violated N.D.R.Crim.P. 30(b), which provides:

> At the close of the evidence or at an earlier time during the trial as the court reasonably directs, any party may file proposed jury instructions. The court may require each instruction to be written on a separate sheet, provided North Dakota pattern jury instructions may be requested by reference to instruction number only. The court shall inform counsel in writing of its action upon requested instructions prior to their argument to the jury. All instructions given by the court to the jurors must be read or given to them orally by the court without disclosing whether the instructions were requested.

[¶ 42] Rule 30(b), N.D.R.Crim.P., states that the district court must give counsel a written copy of an instruction prior to submitting it to the jury. The district court held in its memorandum opinion that the note given to the jury was not a jury instruction, and the court stated: "Had there been precedent, a sup-plemental instruction may have been considered. But, because there was no precedent, the question was answered that none was available.... The answer the Court gave to the jury was an answer and it was not an instruction." Klose did not argue, either in his motion for mistrial or in his motion for a new trial, that the note was an additional jury instruction. Generally, a new issue cannot be considered for the first time on appeal. *State v. Norby*, 2002 ND 71, ¶ 4, 642 N.W.2d 924; *Lang v. Bank of North Dakota*, 423 N.W.2d 501 (N.D.1988). We will not consider this issue.

D

[¶ 43] Klose argues juror misconduct, contending the jury gave an inconsistent, compromised verdict by finding he lacked criminal responsibility in the burglary but was guilty of murder.

[¶ 44] When considering apparent conflicts in a jury's verdict, we look to:

> "[W]hether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial."

*Moszer v. Witt*, 2001 ND 30, ¶ 11, 622 N.W.2d 223 (quoting *Barta v. Hinds*, 1998 ND 104, ¶ 6, 578 N.W.2d 553). On appeal, "[w]e reconcile a verdict by examining both the law of the case and the evidence to determine whether the verdict is logical and probable or whether it is perverse and clearly contrary to the evidence." *Id.*

[¶ 45] Dr. Roux testified on direct examination that delusions from delirium tremens are typically more prominent at night when things are dark and that reality tends to set back in as the daylight sets in. She testified that when delusions do occur during the day, they are generally less severe because the individual experiencing them has more contacts with reality. She went on to testify that she "didn't find it surprising that, as Mr. Klose described, when the police started talking to him when he was back in his apartment by now getting close to morning he is having all these checks on his reality that he is starting to realize that this may—this probably didn't happen the way he remembered it. So in that sense I didn't—I didn't find that unusual in the case." Dr. Roux also testified on cross-examination that an individual who is experiencing delirium tremens can fall in and out of reality.

[¶ 46] When Dr. Roux was questioned about Schultes' body being dragged past the "regenerating" room, she testified she did not consider Schultes' body position during her evaluation. She testified that she knew the wood stick was thrown on Schultes, but admitted Klose never told her the stick was used in the so-called regenerating process. In answering whether she thought Klose was criminally responsible, she stated she was more certain than not that he lacked criminal responsibility. When she was asked whether that leaves open substantial room for doubt, she testified that is for a jury to interpret.

[¶ 47] If the jury believed the evidence presented by the prosecution, they could have concluded that Klose was insane at the time he first entered Schultes' apartment but regained sanity sometime before the murder. The verdict is therefore not clearly contrary to the evidence.

IV

[¶ 48] The district court did not abuse its discretion in denying Klose's motion for mistrial or his motions for a new trial. There exists substantial evidence to support the jury's verdict that Klose is guilty of murder. Accordingly, we affirm the district court orders and judgment of conviction.

[¶ 49] Gerald W. Vande Walle, C.J., William A. Neumann, Mary Muehlen Maring, and Carol Ronning Kapsner, JJ., concur.