2004 ND 77

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Robert L. BUCHHOLZ, Defendant and Appellant.**

No. 20030275.

Supreme Court of North Dakota.

April 13, 2004.

Rehearing Denied May 5, 2004.

Terry W. Elhard, State's Attorney, Ashley, N.D., for plaintiff and appellee.

Donavin L. Grenz, Linton, N.D., for defendant and appellant.

Robert P. Bennett, Assistant Attorney General, Bismarck, N.D., for the Attorney General.

NEUMANN, Justice.

[¶ 1] Robert L. Buchholz appealed from a judgment entered upon a jury verdict finding him guilty of gross sexual imposition. We hold Buchholz waived review of issues about references at trial to other alleged wrongful acts by him, the statute of limitations did not bar the prosecution, the State did not violate a sequestration order, and Buchholz waived his right to receive an adult sexual offender evaluation more than ten days before sentencing. We affirm.

I

[¶ 2] In October 2002, the State charged Buchholz with gross sexual imposition under N.D.C.C. § 12.1–20–03(2), for allegedly engaging in sexual contacts between June 14, 1985, and December 31,

1991, with his stepdaughter, who was less than fifteen years old when the contacts were alleged to have occurred. The complainant was born in 1979. She testified Buchholz engaged in two separate instances of sexual contact with her when she was eleven or twelve years old, and he also frequently entered her bedroom during the night and fondled her breasts. According to the complainant, she had tried to forget about the incidents, but she decided to report them to law enforcement officials more than ten years later in October 2002, when her twelve-year-old half-sister returned home from a scheduled visitation with Buchholz with a hickey. Buchholz denied sexual contact with the complainant. He claimed the complainant was not credible because she "hated" him.

[¶ 3] A jury found Buchholz guilty of gross sexual imposition. At sentencing, Buchholz moved for a stay of execution, judgment of acquittal, new trial, arrest of judgment, and post-conviction relief. The court denied Buchholz's motions, and he appealed from the judgment of conviction.[1]

## II

[¶ 4] On appeal from the judgment of conviction, Buchholz argues the trial court erred in denying his motion to suppress evidence of other alleged wrongful acts and in permitting prosecution witnesses to testify about the alleged wrongful acts. He claims the court erred in allowing the admission of evidence that he was responsible for a hickey on his daughter's neck during her scheduled visitation with him in October 2002. He argues the court ignored its obligations under N.D.R.Ev. 404(b) and 403, and the State's "true motive" in using that evidence was to inflame and prejudice the jury. He also argues the court refused to give a limiting jury instruction on that evidence.

[¶ 5] In a pretrial motion, Buchholz sought to suppress "all testimony, references, allegations and other evidence pertaining to an incident wherein" he was alleged to have given his daughter a hickey and "all testimony, references, allegations and other evidence" pertaining to incidents where he observed a stepdaughter from his second marriage while she was nude or in a partially-clad condition. Buchholz argued the evidence was not admissible under N.D.R.Ev. 404(b) and 403. The State argued evidence about the hickey was admissible under N.D.R.Ev. 404(b) to establish the complainant's motive for reporting the allegations of gross sexual imposition to law enforcement authorities in October 2002, after waiting more than ten years.

[¶ 6] The trial court issued a pretrial order denying Buchholz's motion to suppress. The court recognized evidence of other crimes, wrongs, or acts was generally not admissible to prove the character of a person, but may be admissible for other purposes and concluded "any ruling by the Court would be premature." During trial, Buchholz did not object to any references to, or testimony about, the hickey, and the trial court did not have an opportunity to rule on that evidence under the requirements of N.D.R.Ev. 404(b) and 403. *See State v. Christensen*, 1997 ND 57, ¶ 7, 561

---

1. While his appeal was pending, Buchholz filed a "motion for post conviction relief" in this Court, seeking his "immediate release from incarceration ... pending his appeal." We directed the trial court to treat his "motion for post conviction relief" as a motion for release pending appeal under N.D.R.App.P. 9, and we referred the matter to that court for disposition. The trial court treated Buchholz's motion as an application for post-conviction relief under N.D.C.C. ch. 29–32.1, and in January 2004, the court denied his motion. Buchholz has not appealed the trial court's January 2004 order denying his "motion for post conviction relief."

N.W.2d 631 (stating admissibility of evidence of prior bad acts subject to three-prong requirement under N.D.R.Ev. 404(b) and to balancing analysis under N.D.R.Ev. 403); *State v. Micko*, 393 N.W.2d 741, 744–45 (N.D.1986) (same).

[¶ 7] In *State v. Bell*, 2002 ND 130, ¶ 9, 649 N.W.2d 243, we said:

A touchstone for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court, so the trial court could intelligently rule on it. *State v. Freed*, 1999 ND 185, ¶ 13, 599 N.W.2d 858. In *Freed*, we explained under Rule 103(a)(1), N.D.R.Ev., "error may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected, and ... a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." *Id.* A party must object at the time the alleged error occurs, so the trial court may take appropriate action if possible to remedy any prejudice that may have resulted. *City of Fargo v. Erickson*, 1999 ND 145, ¶ 22, 598 N.W.2d 787 (Sandstrom, J., concurring). Failure to object acts as a waiver of the claim of error. *Id.*

[¶ 8] In *State v. Anderson*, 2003 ND 30, ¶ 7, 657 N.W.2d 245, a trial court denied a defendant's motion in limine to exclude letters written by the defendant to the victim. At trial, the State offered two letters into evidence without objection by the defendant. *Id.* We held the defendant had failed to preserve the issue about the admissibility of the letters, stating:

A motion in limine seeking an evidentiary ruling must be · decided without the benefit of evaluating the evidence in the context of trial. A renewed objection at the time the evidence is offered focuses the court on the objection in the trial context at which time both the relevance and the potential for prejudice will be more discernible. A failure to object at trial "acts as a waiver of the claim of error."

*Id.*

[¶ 9] Here, the trial court denied Buchholz's pretrial motion to suppress evidence about the hickey, stating "any ruling by the Court would be premature." The court's decision contemplated reconsideration of the issue when it was presented in the context of the trial. However, Buchholz did not object to any references to the hickey at trial and did not provide the trial court with an opportunity to rule on the issue in the context of the trial. *See Anderson*, 2003 ND 30, ¶ 7, 657 N.W.2d 245. A party must object when the alleged error occurs at trial so the court can take appropriate action, if possible, to remedy any prejudice that may have resulted. *Id.* We conclude Buchholz's failure to object at trial operates as a waiver of any claimed error about the hickey.

[¶ 10] Buchholz claims the trial court · also allowed the jury to hear evidence he had "peeked" at other girls and observed a stepdaughter while she was nude or in a partially-clad condition. However, the evidence referred to by ·Buchholz was elicited without objection during his cross-examination of witnesses. Buchholz neither objected, nor moved to strike the references to that evidence. *See* N.D.R.Ev. 103(a)(1)· ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection."). *See also State v. Sievers*, ·543 N.W.2d 491, 495 (N.D.1996). Buchholz cannot claim error for evidence he elicited

without objection during cross-examination of witnesses.

[¶ 11] Buchholz claims the trial court refused to instruct the jury on its consideration of evidence about other alleged wrongful acts. Buchholz did not request an instruction on this issue in his requested jury instructions submitted to the court before trial. During discussions about jury instructions at trial, Buchholz asked the court to instruct the jury regarding its "consideration of alleged other acts" without proffering a specific instruction. The court granted Buchholz until the conclusion of testimony to provide the court with an instruction on that issue. When the court subsequently asked Buchholz for an instruction on that issue, he could not "find it and locate it at this point in time," and the court did not instruct the jury on that issue, stating "the instructions will stand as presented."

[¶ 12] In *State v. Olson*, 356 N.W.2d 110, 114 (N.D.1984), this Court said:

> although the trial court may be required to present general jury instructions concerning the issues without request from counsel, "attorneys have the professional responsibility to request or object to specific instructions of points of law resulting from testimony or on developments during trial, Rule 30, N.D.R.Crim.P." *State v. Allery*, 322 N.W.2d 228, 232, n. 3 (N.D.1982).
>
> If a defendant desires more comprehensive instructions on any phase of the case, he must submit written instructions with the request that they be given. *State v. Bowe*, 57 N.D. 89, 220 N.W. 843 (1928). If a party fails to make such a request he cannot predicate error upon omissions in the charge given.

Buchholz's failure to submit a proposed instruction precludes him from claiming error for the failure to instruct on this issue.

[¶ 13] By failing to properly raise these issues about other alleged wrongful acts at trial, Buchholz has failed to preserve these issues for our review unless they are obvious error. We exercise our power to notice obvious error cautiously and only in exceptional situations in which a defendant has suffered a serious injustice. *State v. Freed*, 1999 ND 185, ¶ 14, 599 N.W.2d 858; *State v. Olander*, 1998 ND 50, ¶ 12, 575 N.W.2d 658. We conclude this is not such a case.

III

[¶ 14] Buchholz raises several issues regarding the statute of limitations. He argues the trial court erred in applying the statute of limitations in N.D.C.C. § 29–04–03.1, which, as amended in 1993, provides:

> A prosecution for violation of sections 12.1–20–03 through 12.1–20–08 or of section 12.1–20–11, where the victim was under eighteen years of age at the time the offense was committed must be commenced in the proper court within seven years after the commission of the offense or, if the victim failed to report the offense within this limitation period, within three years after the offense was reported to law enforcement authorities.

[¶ 15] In *State v. Davenport*, 536 N.W.2d 686, 687 (N.D.1995), this Court traced the relevant history of statute of limitations for felony allegations of sexual contact with a person under the age of fifteen:

> [Before 1985] the applicable statute of limitations barred prosecution of felonies generally after three years. NDCC 29–04–02. In 1985, the legislature enacted NDCC 29–04–03.1 that established a seven-year limitation for sexual offenses against a minor victim in a "familial relationship" with the offender. 1985

N.D. Laws ch. 359, § 1. In 1987, the legislature amended NDCC 29–04–03.1 by removing the requirement of a "familial relationship" and by establishing a seven-year limitation for sexual offenses against any victim under the age of eighteen. 1987 N.D. Laws ch. 390, § 3. The 1987 legislature also enacted NDCC 29–04–03.2 directing that, if the victim of the sexual offense was under age fifteen, the limitation period does not begin until the victim reaches the age of fifteen. 1987 N.D. Laws ch. 391, § 1. Finally, the 1993 legislature again amended NDCC 29–04–03.1, in 1993 N.D. Laws ch. 331, § 1, to direct that prosecution for sexual offenses against victims under the age of eighteen must be commenced within seven years after the offense, "or, if the victim failed to report the offense within this limitation period, within three years after the offense was reported to law enforcement authorities."

[¶ 16]  In *Davenport*, 536 N.W.2d at 687–88, this Court cited *State v. Thill*, 468 N.W.2d 643, 647 n. 8 (N.D.1991) and *State v. Pleason*, 56 N.D. 499, 503, 218 N.W. 154, 155 (1928), for the principle that a law that extends a statute of limitations, or provides a new method for tolling the statute, may be applied immediately to all crimes for which the limitation period has not expired under prior law. *See Stogner v. California*, 539 U.S. 607, 123 S.Ct. 2446, 2461, 156 L.Ed.2d 544 (2003) (holding California statute enacted after expiration of previously applicable statute of limitations violated ex post facto clause when newly-enacted statute revived a previously time-barred prosecution). In *Davenport*, at 689, a majority of this Court held the Legislature intended retroactive application of each extension of the relevant statute of limitations for existing offenses for which the statute of limitations had not expired under the prior law.

[¶ 17]  Here, the State charged Buchholz with gross sexual imposition for acts allegedly occurring between June 14, 1985, and December 31, 1991, and the complainant testified the sexual contacts occurred when she was eleven or twelve, which was in 1990 or 1991. Under *Davenport*, the statute of limitations against Buchholz had not expired when the Legislature amended N.D.C.C. § 29–04–03.1 in 1993. We therefore conclude the trial court did not err in applying the 1993 version of N.D.C.C. § 29–04–03.1 to the claims against Buchholz.

■ [¶ 18]  Buchholz argues the application of the 1993 version of N.D.C.C. § 29–04–03.1 to conduct allegedly occurring in 1990 or 1991 violates the ex post facto clause. He argues this Court's decision in *Davenport* should be overruled. However, because there was no time when the statute of limitations against Buchholz had expired, he has no ex post facto claim regarding application of the 1993 version of N.D.C.C. § 29–04–03.1 to acts occurring in 1990 or 1991. *See Stogner*, 123 S.Ct. at 2453–61 (citing *Davenport* for principle that extension of existing statute of limitations is not ex post facto violation and holding law enacted after expiration of previously applicable limitations period violates ex post facto clause when that law is applied to revive a previously time-barred prosecution). Moreover, the Legislature has not amended the relevant language of N.D.C.C. § 29–04–03.1 since this Court's 1995 decision in *Davenport*, and the Legislature's acquiescence is evidence *Davenport* is consistent with Legislative intent. *See Western Nat'l Mut. Ins. Co. v. University of North Dakota*, 2002 ND 63, ¶ 51, 643 N.W.2d 4. We decline Buchholz's invitation to overrule *Davenport*.

■ [¶ 19]  Buchholz claims he was entitled to a jury instruction on the statute of limitations because the complainant tes-

tified she had reported the allegations to friends when she was fifteen or sixteen years old. We have said a defendant is entitled to a jury instruction on the statute of limitations if there are issues of fact concerning whether the applicable statute of limitations has run. *State v. Hersch,* 445 N.W.2d 626, 634 (N.D.1989). However, N.D.C.C. § 29–04–03.1 says "if the victim failed to report the offense within [seven years after the commission of the offense]," the action must be commenced "within three years after the offense was reported to law enforcement authorities." There was no evidence the complainant reported the incidents to law enforcement authorities until October 2002. Under these circumstances, there were no issues of fact about whether the applicable statute of limitations had run, and the trial court did not err in refusing to instruct the jury on that issue.

[¶ 20] Buchholz argues he was denied his right to a speedy and fair trial by the application of the 1993 version of N.D.C.C. § 29–04–03.1. However, the constitutional right to a speedy trial does not attach until a person becomes an accused, and " 'it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge' that activates the speedy trial provision of the Sixth Amendment." *State v. Denny,* 350 N.W.2d 25, 27 (N.D. 1984) (quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). Buchholz was not charged with gross sexual imposition until 2002, and the prosecution against him did not violate his right to a speedy trial.

[¶ 21] To the extent Buchholz suggests preaccusatory delays in this prosecution violate his right to due process, he has not shown actual prejudice and intentional delay by the State to gain some tactical advantage over him or to harass him. *See*

*United States v. Lovasco,* 431 U.S. 783, 790–96, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *Marion,* 404 U.S. at 324–26; *Denny,* 350 N.W.2d at 27–29. *See also Stoner v. Graddick,* 751 F.2d 1535, 1540–47 (11th Cir.1985); *State v. Gray,* 917 S.W.2d 668, 673 (Tenn.1996); *Story v. State,* 721 P.2d 1020, 1026–29 (Wyo.1986).

IV

[¶ 22] Buchholz argues the trial court's refusal to impose sanctions against the State for violating a sequestration order denied him due process and a fair trial. Before trial, the court issued a general order requiring sequestration of witnesses. After the first day of trial, the prosecutor simultaneously met in his office with the complainant and a high school friend of the complainant. At that time, neither the complainant nor her friend had testified. The complainant's friend essentially testified that, during high school, the complainant had told her about the incidents with Buchholz. Buchholz moved to dismiss the prosecution against him on the ground the State had violated the court's sequestration order. In response to the trial court's inquiry about what had transpired during his meeting with the witnesses, the prosecutor said he questioned the witnesses in the presence of each other about issues before the court and:

I guess the reason I called [the complainant] in, yesterday in [Buchholz's] opening statement he mentioned something about she said this happened in 1994, and I wanted to clarify with her on this thing, what happened in 1994. I know it didn't happen in 1994. And it was I think the fact that they moved ... in 1994, that's what happened there. And nothing that Mr. Buchholz—he didn't do anything in 1994. Let's see. I did ask—I did ask—I didn't get into the detail we got into today with [the com-

plainant's friend] as to what, you know, what happened with her dad. She told me he went to prison.

The trial court denied Buchholz's motion to dismiss, ruling:

I'm satisfied, first of all, that the testimony of the [complainant's friend] is offered as corroboration for the statements and disclosure, as opposed to the truth of the matter or as a witness to the event. And, accordingly, while I do believe there is a technical violation of the sequestration order because it occurred during the time period of the trial, that the Court has had the opportunity to listen to the direct testimony of each of the two witnesses and is satisfied that the discussion held did not reflect in a mirror image by one witness to that of the other. The motion to dismiss on the basis of the violation of the sequestration order is denied.

[¶ 23] Rule 615, N.D.R.Ev., provides:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (i) a party who is a natural person, or (ii) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (iii) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

[¶ 24] The plain language of N.D.R.Ev. 615 requires the court to exclude witnesses when requested by a party so "they cannot hear the testimony of other witnesses." Sequestration of witnesses serves two related policies: (1) to prevent witnesses from tailoring testimony in light of the testimony of other witnesses, and (2) to permit discovery of false testimony and other credibility problems. *State v. Skor-*

*ick,* 2002 ND 190, ¶ 9, 653 N.W.2d 698. *See* 29 Charles Alan Wright and Victor James Gold, *Federal Practice and Procedure,* § 6242 (1997). Because of the similarities between N.D.R.Ev. 615 and Fed. R. Ev. 615, we may consider federal precedent in interpreting our rule. *See State v. Randall,* 2002 ND 16, ¶ 5, 639 N.W.2d 439. The federal courts have reached conflicting decisions about whether Fed. R. Ev. 615 precludes out-of-court communications between the witnesses during trial. Wright and Gold at § 6243. Some federal courts have concluded out-of-court communications between witnesses are precluded in order to promote the policies of Fed. R. Ev. 615, which might be frustrated if witnesses could collude outside of court. Wright and Gold, at § 6243. Other federal courts, however, have concluded the plain language of the federal rule is inapplicable because witnesses' out-of-court communications during trial do not permit one witness to "hear the testimony of another witness" within the meaning of that rule. *Id.*

[¶ 25] Here, the trial court's sequestration order did not specifically address witnesses' out-of-court communications during trial. *See* Wright and Gold, at § 6243 (stating trial courts retain discretion to preclude witnesses' out-of-court communications during trial as a function of the court's general powers to manage the conduct of the trial). In the absence of specific language in the sequestration order addressing witnesses' out-of-court communications during trial, we follow federal decisions that hold the plain language of the rule does not apply to witnesses' out-of-court communications during trial. We therefore conclude the State did not violate the sequestration order.

## V

[¶ 26] Buchholz argues the trial court erred in denying his post-trial motion for

stay of execution, judgment of acquittal, new trial, arrest of judgment, and post-conviction relief. He essentially argues there was insufficient evidence to support the verdict.

[¶ 27] We review a trial court's decision on a motion for a new trial under the abuse-of-discretion standard. *State v. Klose*, 2003 ND 39, ¶ 18, 657 N.W.2d 276. A trial court abuses its discretion if its decision is arbitrary, unreasonable, or unconscionable, not the product of a rational mental process leading to a reasoned determination, or a misinterpretation or misapplication of the law. *Bell*, 2002 ND 130, ¶ 6, 649 N.W.2d 243. In assessing sufficiency of the evidence to sustain a conviction, we do not reweigh conflicting evidence or judge the credibility of witnesses. *Klose*, at ¶ 19. Rather, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to ascertain if there is substantial evidence to sustain the conviction. *Id.*

[¶ 28] We conclude there is sufficient evidence, viewed in the light most favorable to the verdict, to support the conviction. We therefore conclude the trial court did not abuse its discretion in denying Buchholz's motion for a new trial on sufficiency of the evidence. Moreover, the other issues raised by Buchholz in his post-trial motion are the same as the issues he has raised on appeal. Because of our resolution of the issues raised in Buchholz's appeal, we conclude the trial court did not abuse its discretion in denying his post-trial motion.[2]

## VI

[¶ 29] Buchholz argues the trial court denied him due process by not pro-viding him with copies of a presentence investigation report and an adult sexual offender evaluation prior to sentencing. He argues the court erred in sentencing him because the adult sexual offender evaluation contained obvious errors.

[¶ 30] After the jury verdict, the trial court ordered a presentence investigation, including a risk assessment mandated by N.D.C.C. § 12.1–32–02(11), and the court scheduled sentencing for September 8, 2003. Dennis Larkin completed an adult sexual offender evaluation of Buchholz, which, in some instances, referred to the person being evaluated as "Olin." At the September 8, 2003 sentencing hearing, Buchholz indicated he had received the presentence investigation report at least ten days before sentencing, but he had not seen the adult sexual offender evaluation and a victim impact statement until "five minutes" before the sentencing hearing. Buchholz objected to the reference to "Olin," and Buchholz sought a reassessment, or at least a clarification of the identification. The court recognized the adult sexual offender evaluation referred to a person named "Olin" and ordered Larkin to supplement and clarify the evaluation by September 12, 2003. The court nevertheless sentenced Buchholz, but stayed imposition of sentence until September 15, 2003, with an order which permitted either party to petition the court for resentencing if the clarification of identification in the adult sexual offender evaluation warranted resentencing. On September 10, 2003, Larkin informed the court another person's name had been inadvertently typed into the evaluation and clarified that the reference to "Olin" meant Buchholz. On September 10, 2003, Buchholz moved for a copy of the adult

---

2. The trial court's January 2004 order denying Buchholz's motion for post-conviction re-lief is not before us in this appeal. *See* fn.1.

sexual offender evaluation and any supplemental evaluations, and the court ordered release of the presentence investigation and adult sexual offender evaluation, as clarified. On September 11, 2003, the court denied Buchholz's post-trial motions for stay of execution, judgment of acquittal, new trial, arrest of judgment, and post-conviction relief. Buchholz did not petition for reconsideration of sentencing, and on September 19, 2003, he appealed from the judgment of conviction.

[¶ 31] Rule 32, N.D.R.Crim.P. deals with presentence investigations and imposition of sentence. The information contained in a presentence report is governed by N.D.R.Crim.P. 32(c)(3)(A). Some types of information may not be included in a presentence report, but may be submitted to the court as an addendum to the report, including any diagnostic or prognostic opinion that might disrupt a program of rehabilitation, any sentence recommendation by parole and probation staff or the victim, any victim impact statement, or any other information including medical, psychiatric or psychological information. N.D.R.Crim.P. 32(c)(3)(B). Under N.D.R.Crim.P. 32(a)(1)(A), before imposing sentence, the court shall determine the defendant and the defendant's counsel have had an opportunity to read and discuss the presentence investigation report, if made available under N.D.R.Crim.P. 32(c)(4)(A), which provides that a presentence report and any addendum are confidential and may not be read or copied by the public, or the parties unless permitted by the court in its discretion. Any disclosure to the defendant of the presentence report and any addendum must occur at least ten days before sentence is imposed, unless that minimum period is waived by the defendant. N.D.R.Crim.P. 32(c)(4)(B). Under N.D.R.Crim.P. 32(c)(2), a defendant's counsel is entitled to notice and a reasonable opportunity to attend any interview of the defendant by parole and probation staff in the course of a presentence investigation.

[¶ 32] Buchholz argues he should have been provided with a copy of the risk assessment and allowed to call Larkin to testify at the sentencing hearing. Buchholz argues his attorney was not given notice and an opportunity to attend any interviews of him during the course of the presentence investigation, as required by N.D.R.Crim.P. 32(c)(2). Buchholz also argues he did not receive a copy of the adult sexual offender evaluation, which was part of the presentence investigation report, more than ten days before the sentencing hearing, in violation of N.D.R.Crim.P. 32(c)(4)(B). He argues if this information had been provided to him, he could have argued for a more lenient sentence.

[¶ 33] At the sentencing hearing, Buchholz said he had received the adult sexual offender evaluation "five minutes" before the hearing, but he did not assert a violation of the ten-day requirement of N.D.R.Crim.P. 32(c)(4)(B). We conclude Buchholz effectively waived any claim about that issue under N.D.R.Crim.P. 32(c)(4)(B). In the trial court, Buchholz also did not argue that he should have been allowed to call Larkin to testify and that his attorney was not given appropriate notice under N.D.R.Crim.P. 32(c)(2). Although Buchholz claimed during oral argument to this Court that he requested a continuance at the sentencing hearing, the transcript of that hearing does not reflect such a request.

[¶ 34] We do not consider issues raised for the first time on appeal. *Anderson,* 2003 ND 30, ¶ 7, 657 N.W.2d 245; *Bell,* 2002 ND 130, ¶ 9, 649 N.W.2d 243; *Freed,* 1999 ND 185, ¶ 13, 599 N.W.2d 858. Under these circumstances, we conclude Buchholz has failed to properly preserve

the sentencing issues he now raises on appeal, and our review is limited to obvious error. We exercise our power to notice obvious error cautiously and only in exceptional circumstances in which a defendant has suffered a serious injustice. *Freed,* at ¶ 14; *Olander,* 1998 ND 50, ¶ 12, 575 N.W.2d 658. We conclude this is not such a case.

## VII

[¶ 35] We affirm the judgment of conviction.

[¶ 36] WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM and GERALD W. VANDE WALLE, C.J.