2004 ND 98

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Michael J. McCLARY, Defendant and Appellant.**

No. 20030237.

Supreme Court of North Dakota.

May 5, 2004.

Leann Katherine Bertsch, Assistant State's Attorney, Bismarck, N.D. for plaintiff and appellee.

Paul Henry Myerchin, Bismarck, N.D., for defendant and appellant.

NEUMANN, Justice.

[¶ 1]  Michael J. McClary appeals from a judgment entered upon a jury verdict finding him guilty of abuse or neglect of a child.  We conclude the jury verdict is not inconsistent and is supported by substantial evidence, the trial court did not err in refusing to dismiss the abuse or neglect charge and in instructing the jury on it, and the court did not err in refusing to

question the jury about its verdict. We affirm.

## I

[¶ 2] McClary lived in Bismarck with Amy Wery and her fifteen-month-old daughter, Lacey Howe. At about 1:45 p.m. on October 15, 2002, Howe was pronounced dead at a Bismarck Hospital. Howe's death was caused by a violent, forceful shaking associated with a blunt force impact to the head, which was described as "shaken baby syndrome." There was evidence both McClary and Wery were involved heavily with drugs and each was alone with Howe on the morning of October 15 for a period of time before her death. McClary and Wery each claimed the other was responsible for Howe's death.

[¶ 3] The State alternatively charged McClary with murder under N.D.C.C. § 12.1–16–01(1)(b) and (c) for allegedly (1) causing Howe's death under circumstances manifesting extreme indifference to the value of human life, "and/or" (2) committing or attempting to commit a felony offense against a child under N.D.C.C. § 14–09–22, and, in the course of and in furtherance of that crime, causing Howe's death. The State also charged McClary with abuse or neglect of a child under N.D.C.C. § 14–09–22 for willfully inflicting bodily injury, substantial bodily injury, or serious bodily injury upon a child under the age of six years. The jury returned a verdict finding McClary not guilty of murder and guilty of abuse or neglect of a child. The court denied McClary's request to ask the jurors "whether the abuse they found was the shaking of the child or whether it was something that wasn't alleged in the indictment." The court subsequently denied McClary's motion for judgment of acquittal on the abuse or neglect charge and for a new trial.

## II

[¶ 4] McClary argues the jury's verdict is legally inconsistent because the jury reached conflicting findings on a necessary element of each count when it found him not guilty of felony murder but guilty of the underlying felony, abuse or neglect of a child. He argues this case is distinguishable from *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) and North Dakota cases dealing with legal inconsistency, and is analogous to *DeSacia v. State,* 469 P.2d 369 (Alaska 1970).

[¶ 5] In *Dunn,* 284 U.S. at 393–94, 52 S.Ct. 189, the United States Supreme Court held inconsistent verdicts on separate counts of a three count indictment against a single defendant did not entitle the defendant to relief. In that case, the defendant was charged under prohibition laws with (1) maintaining a common nuisance by keeping intoxicating liquor for sale at a specified place, (2) unlawful possession of intoxicating liquor, and (3) unlawful sale of intoxicating liquor. *Id.* at 391–92, 52 S.Ct. 189. A jury found the defendant guilty of maintaining a nuisance, but acquitted him of the other two counts. *Id.* The defendant argued the verdicts were inconsistent because the acquittals and the guilty verdict were based on the same evidence. *Id.* at 392, 52 S.Ct. 189. The Supreme Court rejected the defendant's argument under a two-pronged rationale. *Id.* at 393–94, 52 S.Ct. 189. First, the Court said consistency in verdicts was not necessary, because each count in a single indictment was regarded as a separate indictment, and if separate indictments had been presented against the defendant for possession and for maintenance of a nuisance and the cases had been tried separately with the same evidence, an acquittal on one count could not be pleaded as res judicata in the other.

*Id.* at 393, 52 S.Ct. 189. Second, the Court explained the most that could be said for those inconsistent verdicts was that, either in the acquittal or in the conviction, the jury did not speak its real conclusions, but the inconsistent verdicts did not necessarily mean the jury was not convinced of the defendant's guilt. *Id.* The Court interpreted the acquittal as the jury's unauthorized assumption of a power of leniency, and recognized the verdict may have been the result of a compromise or a mistake, but refused to grant the defendant relief because it would require speculation or inquiry into the jury's deliberations. *Id.* at 393–94, 52 S.Ct. 189.

[¶ 6] In *United States v. Powell,* 469 U.S. 57, 59–60, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the defendant argued convictions for using the telephone to facilitate the commission of certain narcotics crimes were inconsistent with acquittals for the underlying narcotics crimes. The Supreme Court effectively defined inconsistent verdicts as "a situation where ... the jury has not followed the court's instructions" and "the verdicts cannot rationally be reconciled," and concluded the verdicts were inconsistent. *Id.* at 65, 69, 105 S.Ct. 471. *See also* Eric L. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts,* 111 Harv. L.Rev. 771, 778 (1998) (defining inconsistent verdicts as "verdicts [that] defy reason: a jury following the court's instructions could not have produced them"). The Court said nothing in the Constitution required a defendant to receive a new trial for an inconsistent verdict, but addressed the issue under its supervisory power over the federal criminal process. *Powell,* 469 U.S. at 65, 105 S.Ct. 471. The Court recognized the rationale from *Dunn* about res judicata could no longer be accepted under *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948) and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which applied the doctrine of collateral estoppel under the circumstances of those cases. *Powell,* at 64, 105 S.Ct. 471. However, the Court concluded *Dunn* rested on a sound rationale that was independent of res judicata, because where truly inconsistent verdicts have been reached, " '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' " *Powell,* at 64–65, 105 S.Ct. 471 (quoting *Dunn,* 284 U.S. at 393, 52 S.Ct. 189). The Court explained inconsistent verdicts that acquit on a predicate offense while convicting on the compound offense are not necessarily windfalls to the prosecution at the defendant's expense, because it is equally possible the jury properly reached its conclusion on the compound offense, but through mistake, compromise, or lenity arrived at an inconsistent conclusion on the predicate offense. *Id.* at 65, 105 S.Ct. 471. The Court said "[i]nconsistent verdicts ... present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored." *Id.* The Court said any attempt at an individualized assessment of the reason for the inconsistency would be based either on pure speculation or would require inquiry into the jury's deliberation, which courts generally will not undertake. *Id.* at 66–67, 105 S.Ct. 471. The Court concluded inconsistent verdicts were reviewable to the extent a defendant could challenge the sufficiency of the evidence supporting the guilty verdict, and where the evidence was sufficient to sustain the conviction on the compound offense, it was speculation to suggest the conviction was a mistake and the acquittal on the predicate offense was the verdict the jury really

meant. *Id.* at 67–68, 105 S.Ct. 471. The *Powell* rationale is premised upon an inconsistent acquittal and conviction and uncertainty about whose ox has been gored, but the Court indicated "[n]othing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other." *Id.* at 69, n. 8, 105 S.Ct. 471.

[¶ 7] Federal courts and the vast majority of state courts follow *Powell,* and hold that an inconsistent acquittal and guilty verdict against a single defendant in the same prosecution does not entitle the defendant to relief. Muller, 111 Harv. L.Rev. at 787–89 (collecting cases). *See* 5 LaFave, Israel, and King, *Criminal Procedure* § 24.10(b) (2d ed.1999); Steven T. Wax, *Inconsistent and Repugnant Verdicts in Criminal Trials,* 24 N.Y. L. Sch. L.Rev. 713, 732–33 (1979); Annot., *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information,* 18 A.L.R.3d 259, §§ 2–3 (1968); Annot., *Inconsistency of Criminal Verdict With Verdict or Another Indictment or Information Tried at Same Time,* 16 A.L.R.3d 866, § 2 (1967). A small minority of states have declined to follow *Powell* and require consistent verdicts on multiple counts against a single defendant as a matter of state law. *Muller,* at 787 (collecting cases). *See DeSacia,* 469 P.2d at 375–78 (declining to follow *Dunn* under Alaska law).

[¶ 8] Some courts have distinguished between "logically" and "legally" inconsistent verdicts. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). In *Moore,* at 108 (citing *People v. Hoffer,* 106 Ill.2d 186, 88 Ill.Dec. 20, 478 N.E.2d 335, 340 (1985)), the Minnesota Supreme Court considered a defendant's argument that convictions for first and second degree murder were

"legally" inconsistent because a necessary element of each offense was subject to conflicting findings. The court said logically inconsistent verdicts do not entitle a defendant to a new trial. *Moore,* at 108 (citing *State v. Olkon,* 299 N.W.2d 89, 104 (Minn.1980) and *State v. Juelfs,* 270 N.W.2d 873, 874 (Minn.1978) for general rule that defendant found guilty of one count of two count indictment is not entitled to new trial or dismissal because jury found defendant not guilty of other count even if verdicts may be said to be logically inconsistent). In *Moore,* at 108, the court said the defendant's convictions for first degree murder and second degree murder were at least "logically" inconsistent because they required both the presence and the lack of premeditation, but the verdicts were not "legally" inconsistent unless lack of premeditation was a necessary element of second degree murder. The court concluded although premeditation was an element of first degree murder, lack of premeditation was not a necessary element of second degree murder and guilty verdicts for first and second degree murder were not legally inconsistent, especially where the defendant was sentenced and judgment was entered only on the first degree murder conviction. *Id.* In *State v. Netland,* 535 N.W.2d 328, 331 (Minn.1995), the Minnesota Supreme Court reiterated a distinction between "logically" and "legally" inconsistent verdicts under Minnesota law and said guilty verdicts may be legally inconsistent if a single necessary element of a greater and an included offense are subject to conflicting findings by the jury. *See also State v. Moore,* 458 N.W.2d 90, 94 (Minn.1990) (holding guilty verdict for first degree premeditated murder was legally inconsistent with guilty verdict for second degree manslaughter).

[¶ 9] Although this Court has referred to both "logically" and "legally" inconsistent verdicts for claims about inconsistent

acquittals and convictions, our decisions have effectively followed *Powell* and its definition of an inconsistent verdict as a situation where the jury has not followed the court's instructions and the verdicts cannot be rationally reconciled.

[¶ 10]   In *State v. Swanson,* 225 N.W.2d 283, 284–85 (N.D.1974), this Court considered an argument about inconsistent jury verdicts.   There, the defendant was charged with two counts of assault and battery for acts against a husband and a wife.   *Id.* at 284.   The trial court instructed the jury on assault and battery and the lesser included offense of assault, and the jury acquitted the defendant of both counts of assault and battery and convicted him of one count of assault.   *Id.*   The defendant argued the acquittals on the assault and battery charges were inconsistent with the assault conviction.   *Id.*   This Court said every battery was a consummated assault, but not every assault was a battery, and concluded the jury may well have found there was an unlawful offer or threat to use force, i.e., an assault, but the subsequent use of force was justified on the basis of self-defense.   *Id.* at 284–85.   Although we essentially concluded the verdicts could be rationally explained and thus were not inconsistent, we also said, in any event, strict standards of logical consistency did not apply to jury verdicts in criminal cases and concluded the verdicts were not legally inconsistent:

> "[L]ogical consistency in the verdict as between the several counts in a criminal information is not required.  The verdict will be upheld despite the fact that the counts of which the defendant was convicted cannot be logically reconciled with the counts of which the defendant was acquitted.
>
> . . . .
>
> "... [I]t is conceded that juries have historically exercised a sense of lenity in

criminal matters ... and have granted numerous defendants clemency for crimes which they have committed and which the evidence is sufficient to sustain.   Such is especially true today in light of prosecutorial practice to charge the defendant with all possible crimes arising from a specific transaction in hopes that the jury will convict on some, if not all."

*Id.,* at 285 (quoting *State v. Mills,* 62 Wis.2d 186, 214 N.W.2d 456, 458 (1974)).

[¶ 11]   In *State v. Moran,* 474 N.W.2d 77, 78 (N.D.1991), the defendant, a convicted felon, was charged with aggravated assault and with unlawful possession of a firearm by a convicted felon.   The trial court instructed the jury that self-defense was a defense to both charges, and the jury acquitted the defendant on the aggravated assault charge, but convicted him of unlawful possession of a firearm.   *Id.*   The defendant argued the acquittal on the aggravated assault charge indicated the jury must have determined he used the firearm in self-defense, and the jury should also have acquitted him of unlawful possession of a firearm.   *Id.*   We concluded there was no inconsistency between the acquittal for aggravated assault and the conviction for unlawful possession of a firearm:

> "[S]trict standards of logical consistency need not be applied to jury verdicts in criminal cases." *State v. Swanson,* 225 N.W.2d 283, 285 (N.D.1974). Here, [the victim] testified that the gun [the defendant] used belonged to [the defendant].   [The victim] also testified that he did not bring the gun into the house.   The jury thus heard evidence that [the defendant] owned the gun that he used to shoot [the victim] and that the gun was in [the defendant's] own bedroom in his own home.   This is substantial evidence showing that [the defendant] knowingly possessed the gun

prior to the altercation with [the victim]. Therefore, there is no logical inconsistency in the verdicts.

*Moran,* at 78.

[¶ 12]   In *State v. Jahner,* 2003 ND 36, ¶ 2, 657 N.W.2d 266, the defendant was charged with manslaughter for recklessly causing the death of a person in a vehicle and with reckless endangerment for recklessly endangering the lives of other passengers in the vehicle.   A jury convicted the defendant of reckless endangerment, but acquitted him of manslaughter.   *Id.* at ¶¶ 3, 16.   The defendant argued the jury's acquittal on the manslaughter charge indicated it rejected the notion he was reckless, and the guilty verdict for reckless endangerment was inconsistent and repugnant with the acquittal.   *Id.* at ¶ 16.   We recognized some courts have attempted to distinguish inconsistency and repugnancy in verdicts containing multiple counts.   *Id.* at ¶ 17 (citing Wax, 24 N.Y. L. Sch. L.Rev. at 716).   However, we said our standard for reconciling a jury verdict is whether the verdict is legally inconsistent.   *Id.* at ¶ 17.   We said the required culpability for manslaughter was recklessly and the required culpability for reckless endangerment also was recklessly, and the apparent inconsistency to be reconciled was whether it was legally inconsistent for the jury to acquit the defendant of manslaughter and find him guilty of reckless endangerment because both offenses required the same level of culpability.   *Id.* at ¶ 19.   Applying the analysis from *Moran,* we concluded the verdict was not legally inconsistent and was supported by the evidence:

> Jahner was charged with manslaughter for the death of Smith and reckless endangerment for endangering the public and the lives of the three other passengers in the vehicle.   The level of culpability for an offense is analyzed at the time a person engaged in the conduct which constituted an offense.   *See* N.D.C.C.   §§ 12.1–02–01 and 12.1–02–02(1).   In this case, the evidence permits the jury to find the culpability level related to the death of one passenger different from the culpability level determined for the period prior to the death when the passengers asked Jahner to slow down.   One of the passengers in the car testified that prior to the accident the passengers were hollering at Jahner, who was driving the vehicle, to slow down but he would not listen.
>
> . . . .
>
> Even if a jury fails to convict a defendant on a charge having a similar element to a charge on which the defendant is convicted, there is no legal inconsistency if there is substantial evidence to support the charge on which he is convicted.   Thus, we conclude, as we did in *Moran,* there is no inconsistency in a verdict in which there is substantial evidence establishing the defendant committed reckless endangerment, even though the jury found the defendant not guilty of manslaughter which also has the element of recklessness.   Because the evidence supports the jury's finding that Jahner recklessly endangered the lives of the passengers prior to the death of Smith, we conclude the verdict is supported by the evidence and it is not legally inconsistent.

*Jahner,* at ¶¶ 20–21.

[¶ 13]   In *State v. Klose,* 2003 ND 39, ¶ 43, 657 N.W.2d 276, the defendant argued a verdict was inconsistent because the jury found the defendant lacked criminal responsibility for a burglary, but was guilty of murder.   We said we reconcile a claimed inconsistent verdict by examining both the law of the case and the evidence to ascertain whether the verdict represents a logical and probable decision on the relevant issues submitted to the jury.

*Id.* at ¶ 44. Based on the evidence presented to the jury, we concluded the jury could have decided the defendant was insane when he entered the victim's apartment, but regained sanity before the murder. *Id.* at ¶ 47.

[¶ 14] Under the trial court's instructions in this case and the evidence, the jury verdicts are not inconsistent. McClary was charged with alternative theories of murder under N.D.C.C. § 12.1–16–01(1)(b) and (c), which provides:

1. A person is guilty of murder, a class AA felony, if the person:

    . . . .

    b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; or

    c. Acting either alone or with one or more other persons, commits or attempts to commit . . . a felony offense against a child under section . . . 14–09–22, . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, the person or any other participant in the crime causes the death of any person.

McClary was also charged with abuse or neglect of a child under N.D.C.C. § 14–09–22, which provides, in part:

1. Except as provided in subsection 2, a parent, adult family or household member, guardian, or other custodian of any child, who willfully commits any of the following offenses is guilty of a Class C felony except if the victim of an offense under subdivision a is under the age of six years in which case the offense is a Class B felony:

    a. Inflicts, or allows to be inflicted, upon the child, bodily injury, substantial bodily injury, or serious bodily injury as defined by section 12.1–01–04 or mental injury.

[¶ 15] At trial and without objection by either party, the court instructed the jury on murder:

1. That on or about October 15, 2002;

2. In Burleigh County, North Dakota;

3. The defendant, Michael J. McClary;

4. Willfully caused the death of Lacey Howe, a human being; and

5. The death of Lacey Howe was caused under circumstances manifesting extreme indifference to human life; and/or

6. The defendant, Michael J. McClary, committed or attempted to commit a felony offense against a child and, in the course of and in furtherance of such crime, caused the death of Lacey Howe.

The court also instructed the jury on abuse or neglect of a child:

1. That on or about October 15, 2002;

2. In Burleigh County, North Dakota;

3. The defendant, Michael J. McClary;

4. Was an adult household member of a child, Lacey Howe; and

5. He willfully inflicted bodily injury, substantial bodily injury or serious bodily injury upon the child, Lacey Howe; and

6. The child, Lacey Howe, was under the age of six years.

[¶ 16] Under the trial court's instructions and the evidence, we conclude the jury's acquittal for murder and conviction for abuse or neglect of a child can be rationally reconciled and do not represent inconsistent verdicts. The court instructed the jury it could find McClary guilty of murder if it found McClary willfully caused Howe's death under circumstances manifesting extreme indifference to human life "and/or" McClary committed or at-

tempted to commit "a felony offense against a child" and, in the course of and in furtherance of such crime, caused Howe's death. The use of the phrase "and/or" indicates a combination of the conjunctive and the disjunctive and suggests an alternative which should have been avoided. *See* William P. Statsky, *Legislative Analysis and Drafting*, 184 (2d ed.1984); *North Dakota Legislative Drafting Manual* 104 (2003). Moreover, the part of the court's instruction about committing or attempting to commit "a felony offense against a child" did not state the "felony offense" was abuse or neglect of a child, and nothing in the court's instructions informed the jury the felony offense was abuse or neglect of a child. *Compare* NDJI—Criminal K-6.03 (stating essential elements of offense and noting insertion of applicable allegation from N.D.C.C. § 14-09-22 if charge alleges felony offense against a child). The court's murder instruction should have used the disjunctive "or" and should have identified the "felony offense" as abuse or neglect of a child.

■ [¶ 17] Under the court's instructions, if the jury found McClary did not willfully cause Howe's death under circumstances manifesting extreme indifference to the value of human life, the "and/or" language may have precluded the jury from alternatively considering whether McClary caused Howe's death while committing or attempting to commit a felony offense against a child. Even if the jury had considered that alternative element, however, the jury was not informed that abuse or neglect of a child was the "felony offense against a child." Although the parties may have argued the "felony offense" was abuse or neglect of a child, the court instructed the jury that the court's instructions were the law that governed the case and it was the jury's duty to accept the law given in the instructions.

The court further instructed the jury that before it could find McClary guilty, it must find beyond a reasonable doubt he committed each element of the crime charged. The court also instructed the jury if counsel made any statements as to the law which were not supported by the instructions, the jury should disregard those statements. A jury is presumed to follow instructions given by the trial court. *State v. Ellis*, 2001 ND 84, ¶ 23, 625 N.W.2d 544. The court's murder instruction benefitted McClary, and he cannot complain about instructions that were more favorable to him. *State v. Rott*, 380 N.W.2d 325, 329 (N.D.1986). There was some evidence McClary admitted shaking Howe, but there was also evidence he did not believe the shaking was sufficient to cause Howe's death. Under these instructions and the evidence, the jury could have acquitted McClary of murder and found him guilty of abuse or neglect of a child. We therefore conclude the jury verdicts can be rationally reconciled and are not inconsistent. Because we conclude these verdicts can be rationally explained under the court's instructions and evidence and are not inconsistent, we do not address McClary's argument that we may provide him greater protection than federal law for inconsistent acquittals and guilty verdicts. *See DeSacia*, 469 P.2d at 375–78, (declining to follow *Dunn* under Alaska law).

### III

[¶ 18] McClary argues obvious error occurred when the trial court failed to dismiss the charge for abuse or neglect of a child and when the court instructed the jury on that count.

■ [¶ 19] We exercise our authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered a serious injustice. *State v. Anderson*, 2003 ND 30, ¶ 8, 657

N.W.2d 245; *State v. Olander*, 1998 ND 50, ¶ 12, 575 N.W.2d 658. In *Olander*, at ¶¶ 13–14, we applied the plain error framework from federal law for analyzing claims of obvious error under North Dakota law, and we said an appellate court may notice a claimed error that was not brought to the attention of the trial court if there was (1) error, (2) that is plain, and (3) affects substantial rights. Under that framework, we said once a defendant establishes an obvious error affects substantial rights, we have discretion to correct the error and should correct it if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at ¶ 16 (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

[¶ 20] McClary argues the court's failure to dismiss the charge of abuse or neglect of a child violated double jeopardy. The double jeopardy clause prohibits successive prosecutions and punishments for the same criminal offense. *State v. Backlund*, 2003 ND 184, ¶ 40, 672 N.W.2d 431. The double jeopardy clause protects against three types of violations: (1) prosecuting a defendant again for the same conduct following an acquittal; (2) prosecuting a defendant for the same crime after a conviction; and (3) subjecting a defendant to multiple criminal punishments for the same conduct. *Id.* Here, McClary was prosecuted one time for two charges, and he was not subjected to successive prosecutions or multiple punishments under the double jeopardy clause. McClary's double jeopardy claim is not obvious error.

[¶ 21] McClary also argues the trial court should not have instructed the jury on the charge for abuse or neglect of a child, and the court "should have realized the abuse or neglect of child charge was a necessary included offense in the felony murder charge and that it could only instruct on it if the jury could reasonable [sic] acquit on the greater offense." He argues the jury could not acquit him of felony murder and at the same time find him guilty of the underlying felony.

[¶ 22] McClary's argument ignores that he was charged with murder under alternative theories. Moreover, neglect or abuse of a child is not a lesser included offense of felony murder. An "included offense" means an offense which is established by proof of the same or less than all the facts required to establish the commission of the offense charged. N.D.C.C. § 12.1–01–04(15)(a). Under N.D.C.C. § 12.1–16–01(1)(c), a person is guilty of murder if the person "commits or attempts to commit" a felony against a child under N.D.C.C. § 14–09–22. A felony murder charge does not require the defendant to have committed the underlying felony, and the underlying felony is not an included offense of felony murder. To the extent McClary's argument suggest that the verdicts are inconsistent, we have previously concluded the verdicts are not inconsistent because they can be rationally reconciled under the court's instructions. McClary's claim the court should not have instructed the jury on the offense of abuse and neglect of a child is not obvious error.

IV

[¶ 23] McClary argues the trial court erred in refusing to question the jury about its guilty verdict. After the jury returned its verdict, McClary's trial counsel asked the court to question the jury how it reached its verdict:

It would appear that the verdict is inconsistent in as much as the abuse of child was charged as or alleged as the shaking of the child. If they found child abuse because he was using drugs around the child, or because he didn't

call the medical authorities as quickly as he should have, that may very well be a lesser offense than the shaking as it was charged in the indictment, and I think that the jury should be asked whether the abuse they found was the shaking of the child or whether it was something that wasn't alleged in the indictment.

The court refused the request to question the jury.

■ Section 29–22–26, N.D.C.C., provides, in part:

If the jurors return a verdict of guilty against the accused, the court, before it is accepted, shall ascertain whether it conforms to the law of the case. If, in the opinion of the court, the verdict does not conform to the requirements of the law of the case, the court, with proper instructions as to the error, shall direct the jurors to reconsider the verdict and the verdict cannot be accepted nor recorded until it is rendered in proper form.

[¶ 24] Nothing in the language in N.D.C.C. § 29–22–26 requires the trial court to ask jurors how they reached their verdict. Rather, the plain language of that statute requires a trial court to ascertain whether a verdict conforms to the law of the case before accepting the verdict. A trial court satisfies its obligation under N.D.C.C. § 29–22–26 by comparing the verdict with the law of the case, and the court is not required to question individual jurors about how the verdict was reached. McClary's argument and proposed question for the jury is contrary to N.D.R.Ev. 606(b), which generally prohibits a juror from testifying about the mental processes inherent in arriving at a verdict. *State v. Clark*, 1997 ND 199, ¶ 7, 570 N.W.2d 195. Rule 606(b) N.D.R.Ev., is limited to cases where extraneous prejudicial information was improperly brought to the jurors' attention, any outside influence was improperly brought to bear upon a juror, or whether the verdict was arrived at by chance. *Clark*, at ¶ 7. We conclude the trial court did not err in refusing to question the jurors about the verdict.

## V

■ [¶ 25] McClary argues the trial court erred in denying his motion for judgment of acquittal and for a new trial. His argument about the denial of his motion for judgment of acquittal challenges the sufficiency of the evidence to support the conviction.

■ [¶ 26] To successfully challenge the sufficiency of the evidence on appeal, a defendant must show the evidence, when viewed in a light most favorable to the verdict, permits no reasonable inference of guilt. *Klose*, 2003 ND 39, ¶ 19, 657 N.W.2d 276. In deciding whether the evidence is sufficient to support the verdict, we do not resolve conflicts in the evidence, nor do we judge the credibility of the witnesses. *Id.* We conclude there was substantial evidence, viewed in the light most favorable to the verdict, to support McClary's conviction.

■ [¶ 27] We review a trial court's decision on a motion for a new trial under the abuse-of-discretion standard. *Klose*, 2003 ND 39, ¶ 18, 657 N.W.2d 276. Because of our resolution of the issues raised in McClary's appeal, we conclude the trial court did not abuse its discretion in denying his motion for a new trial.

## VI

[¶ 28] We affirm the conviction.

[¶ 29] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.