# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2024 ND 211

State of North Dakota,                                     Plaintiff and Appellee

v.

Jorge Villazana,                                          Defendant and Appellant

### No. 20230307

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Dann E. Greenwood, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Amanda R. Engelstad, State's Attorney, Dickinson, ND, for plaintiff and appellee; submitted on brief.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Jorge Villazana appeals from a criminal judgment entered following a jury verdict finding him guilty of reckless endangerment with the use of a firearm and terrorizing without the use of a firearm. Villazana was acquitted of attempted murder. Villazana argues the district court erred by allowing impermissible N.D.R.Ev. 404(b) prior acts evidence at trial resulting in juror confusion and an inconsistent verdict. We affirm.

I

[¶2]   On May 4, 2022, Villazana was charged with one count of reckless endangerment, one count of terrorizing, and one count of attempted murder. On August 8, 2022, the State filed a notice of dangerous special offender based upon Villazana's use of a firearm during the commission of the three charges. On April 14, 2023, the State filed a notice of intent to use Rule 404(b) testimonial evidence regarding Villazana's prior acts of domestic violence and threatening text messages, alleging it was intended to show not only motive, intent, absence of mistake, or lack of accident by the defendant, but the evidence would also "provide a clearer picture of the violence and abuse that was present" in Villazana and Nicole Freels's relationship. On April 26, 2023, Villazana filed a motion in limine to exclude such evidence. During a status conference held on May 1, 2023, the district court heard arguments and conducted some analysis under N.D.R.Ev. 404(b) but deferred ruling on the issue until trial.

[¶3]   A three-day trial began on May 2, 2023. At trial, Freels testified that her relationship with Villazana developed from a friendship to a romantic relationship, but that Villazana "became very controlling" and would send her "threatening text messages." The State offered copies of text messages between Villazana and Freels as an exhibit, which was received after Villazana had "no objection." Freels then read text messages into evidence beginning from May 1, 2022, approximately three days before the shooting. Text messages sent by Freels discussed Villazana "hit[ting] on [her] again"; she was "beyond over

[his] . . . physical abuse" and was "not losing [her] life and [her] opportunity"; she referred to Villazana as being "unstable and dangerous"; she did not "fe[el] safe around [him]" by herself; she told Villazana to "go find someone else to terrorize"; she referred to Villazana previously putting his hands on her; and she indicated she had "no doubt in [her] mind that [Villazana] would take [her] life without hesitation."

[¶4] Freels also read into evidence text messages sent from Villazana to her where he stated, "[I]f I see you with someone I'll take it out on the both of you"; he indicated he would find her, he would come for her, and she "shouldn't feel safe"; when she goes against him, "it makes [him] angry"; and "I'm going to become a very fucking bad person n [sic] I promise you no one will save me n [sic] won't want to be saved. I hope someone kills me or what ever [sic] but I'm going so hard out here that I just don't care."

[¶5] The State asked Freels about the "first incidence of abuse that [she] remember[s]." Villazana objected to the question as "impermissible 404(b) evidence." The district court stated, "I thought we had addressed that. It was my impression that this was not 404(b) evidence. It's evidence that demonstrates a continuation of the conduct, so I'm going to overrule your objection." Freels then testified about Villazana choking her out, and how he "grabbed [her] by the back of the head and slammed [her] head into the counter and had [her] down in a corner crying" on either May 2 or May 3, 2022.

[¶6] Freels then testified that she and Villazana argued in the early hours of May 4, 2022, and when a third party, Shana Meschkehurt, intervened, Villazana pointed a gun at Meschkehurt. Villazana then turned, pointed the gun at Freels, and pulled the trigger, shooting her in the face at close range. A bystander testified similarly that Villazana was angry and arguing with Freels when Meschkehurt "chime[d] in." According to the bystander, Villazana stood up, got in Meschkehurt's face with a handgun, and screamed at her to "shut the 'F' up." The bystander further testified Villazana then spun around toward Freels and the gun went off; Villazana then spun back around towards Meschkehurt, pointed the gun at her, and screamed again.

2

[¶7]   The jury found Villazana guilty of reckless endangerment with the use of a firearm, guilty of terrorizing without the use of a firearm, and not guilty of attempted murder. The district court entered its criminal judgment on August 28, 2023. Villazana timely appealed.

II

[¶8]   On appeal, Villazana argues the district court erred by allowing N.D.R.Ev. 404(b) prior acts evidence of domestic violence causing juror confusion and an inconsistent verdict, and failing to apply the balancing test under N.D.R.Ev. 403.

[¶9]   This Court reviews a trial court's evidentiary ruling under an abuse of discretion standard. *State v. Alvarado*, 2008 ND 203, ¶ 9, 757 N.W.2d 570. "A trial court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law." *Id.* The Court applies this deferential standard of review "to provide the trial courts with greater control in the admissibility of evidence." *Id.*

[¶10] Generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." N.D.R.Ev. 404(a). Rule 404(b), N.D.R.Ev., provides:

> (b) Other Crimes, Wrongs, or Acts.
>
>> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>>
>> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>>
>> (3) Notice in a Criminal Case. In a criminal case, the prosecutor must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

[¶11] The State filed a written pretrial notice of intent to use prior acts of domestic violence and threatening text messages under N.D.R.Ev. 404(b) for purposes of showing motive, intent, absence of mistake, or lack of accident. The State argued the evidence of prior domestic abuse and threatening text messages was admissible under the three-step analysis required under Rule 404(b); therefore, Rule 403, under which the court may exclude relevant evidence, was not triggered.

[¶12] "The longstanding common law rule on prior-act evidence is that it is inadmissible when it is evidence of a wholly separate and independent crime and is used to show a propensity to commit such acts." *Alvarado*, 2008 ND 203, ¶ 10 (cleaned up). Thus, "Rule 404(b) only excludes evidence of other acts and crimes committed by the defendant when they are *independent* of the charged crime, and do not fit into the rule's exceptions." *Id.* Rule 404(b) was not intended "to exclude evidence of activity in furtherance of the same criminal activity." *State v. Christensen*, 1997 ND 57, ¶ 8, 561 N.W.2d 631.

[¶13] Under Rule 404(b), district courts are to apply a three-step analysis to determine whether the evidence of other crimes, wrongs, or acts is admissible:

1) the court must look to the purpose for which the evidence is introduced; 2) the evidence of the prior act or acts must be substantially reliable or clear and convincing; and 3) in criminal cases, there must be proof of the crime charged which permits the trier of fact to establish the defendant's guilt or innocence

4

independently on the evidence presented, without consideration of the evidence of the prior acts.

*Alvarado*, 2008 ND 203, ¶ 14. This Court has recognized that the final step in the three-step analysis usually can be satisfied with a cautionary instruction about the admissibility of the evidence for a limited purpose. *State v. Micko*, 393 N.W.2d 741, 744 (N.D. 1986).

[¶14] At a status conference the day before trial, the district court addressed Rule 404(b)'s application to the text messages, referencing *Alvarado*, 2008 ND 203, and acknowledging the similarities of prior domestic violence between the two cases and noting how the domestic violence here "may not be another crime. It may be evidence of the furtherance of the same activity . . . ." The State argued the text messages placed Freels "into a state of fear," indicating its intent was to present statements of prior domestic abuse. The court went on, stating:

> I think that the Court's inclination is to admit the text messages and, I think to a certain extent, that the references to the domestic violence are admissible . . . but the specifics of an incident that's not specifically identified in the text messages, I think, stands separate. You have to deal with that as it arises or as the evidence is presented in terms of whether or not . . . it meets all the other standards if you get back into 404(b).

The court added the evidence was reliable because Freels mentioned the violence which was not contradicted in the text messages. However, the court reserved making a final ruling until sufficient evidence of the crime was provided to substantiate the crime, standing alone, without use of the text messages and prior domestic abuse evidence.

A

[¶15] Villazana argues the text messages should have been excluded under Rule 404(b). At trial, when the State offered the text messages into evidence through Freels, Villazana responded, "no objection." The district court received the text messages into evidence. By responding "no objection" to the text messages' admissibility at trial, Villazana waived any argument on appeal as to their

admissibility. *See State v. Shick*, 2017 ND 134, ¶ 8, 895 N.W.2d 773 (concluding the defendant waived any claim of error by responding "no objection" when the State offered evidence). The court did not abuse its discretion in admitting the text messages.

B

[¶16] Villazana further argues "[t]he trial court did no analysis of the [testimonial] evidence under 404(b) or 403 but instead erroneously applied this Court's holding from *Alvarado*."

[¶17]  At trial, Villazana objected to Freels testifying about the first incidence of domestic violence, arguing it was impermissible under Rule 404(b). The district court overruled the objection, stating "[i]t was my impression that this was not 404(b) evidence. It's evidence that demonstrates a continuation of conduct, so I'm going to overrule the objection." The court conducted part of the Rule 404(b) analysis to Freels's testimony at the status conference by stating "[i]t may be evidence of the furtherance of the same activity," and was reliable since the domestic violence was discussed in text messages between Villazana and Freels. However, the court indicated at the status conference that, until trial, it could not conduct the third prong on whether there was sufficient evidence of the crime that would stand alone. At the time the court admitted Freels's testimony regarding domestic violence, she had not yet testified that Villazana was pointing the firearm at Meschkehurt before spinning around and shooting Freels. There was not yet proof of the crimes charged without consideration of the prior domestic violence for the trier of fact to establish the defendant's guilt or innocence independently on the evidence presented to meet the third prong of the test under Rule 404(b). The court abused its discretion in admitting the testimonial evidence of domestic violence under Rule 404(b) because the third prong of the test was not met.

[¶18] We next determine whether the district court's error warrants reversal. Under N.D.R.Crim.P. 52(a), "[a]ny error, defect, irregularity or variance that does not affect substantial rights must be disregarded." When we review a non-constitutional trial error, our objective is to determine whether the error was so

6

prejudicial that substantial injury occurred and a different decision would have resulted without the error. *State v. Acker*, 2015 ND 278, ¶ 12, 871 N.W.2d 603. If not, the error is harmless and not grounds for reversal. *Id.*

[¶19] After the district court admitted the testimony regarding domestic violence, Freels and other witnesses testified that Villazana pointed a firearm at Meschkehurt before spinning around and shooting Freels. While the court's ruling at the time the testimonial evidence was admitted was in error, the error under Rule 404(b) was harmless on this basis, because proof of the crimes charged without consideration of the prior domestic violence was later presented for the trier of fact to establish the defendant's guilt or innocence independently on the evidence presented.

[¶20] We also consider the substance of the evidence admitted over objection. Freels testified that Villazana "choked [her] out" and had "grabbed [her] by the back of [her] head and slammed her head into the counter." Villazana has not argued on appeal how this evidence of domestic violence is more prejudicial than the evidence of domestic violence admitted without objection through the text messages. The text messages admitted without objection discussed Villazana hitting Freels, physically abusing her, putting hands on her, being unstable and dangerous, and Freels not feeling safe around him by herself. In the text messages, Freels also indicated she had no doubt in her mind that Villazana would take her life without hesitation. Under the circumstances of this case, we conclude the error made in admitting this additional evidence based on the objection made under Rule 404(b) was harmless.

[¶21] We next turn to Villazana's argument that the district court erred by failing to conduct the balancing test under N.D.R.Ev. 403. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence. Under N.D.R.Ev. 103(a)(1)(B), an objection to the introduction of the evidence must state the specific ground of the objection unless it was apparent from the context. *State v. Procive*, 2009 ND 151, ¶ 10, 771 N.W.2d 259. Villazana did not object at trial on the basis of Rule 403. An issue not raised in the district court is not generally

7

reviewable on appeal unless it constitutes obvious error under N.D.R.Crim.P. 52(b). *State v. Hart*, 1997 ND 188, ¶ 22, 569 N.W.2d 451. Villazana failed to properly preserve the issue under Rule 403. "The burden to show an obvious error is on the appellant, and when it is not argued, it is difficult for an appellate court to conclude the burden is satisfied." *State v. Sah*, 2020 ND 38, ¶ 9, 938 N.W.2d 912 (declining to address obvious error when appellant did not argue it). We generally will not consider whether a court committed obvious error if the issue is not briefed. *See State v. Hansford*, 2019 ND 52, ¶ 29, 923 N.W.2d 113 ("We only decide issues that have been thoroughly briefed and argued."); *see also State v. Pederson*, 2024 ND 79, ¶ 18, 6 N.W.3d 619 (declining to consider whether the district court committed obvious error when appellant did not argue the court committed obvious error); *State v. Thomas*, 2022 ND 126, ¶¶ 19-20, 975 N.W.2d 562 (not addressing obvious error because appellant did not argue it). We decline to consider whether obvious error is implicated.

III

[¶22] Villazana argues the jury's guilty verdict on the charge of terrorizing is legally inconsistent, because the jury found him guilty of terrorizing without the use of a firearm, even though "the evidence presented was that on May 4, 202[2,] Mr. Villazana pointed a gun at Ms. Freels and shot her." The State argues that "although the verdict may be perplexing or logically inconsistent, it is not legally inconsistent."

[¶23] This Court's standard of review for reconciling a jury verdict is whether the verdict is legally inconsistent. *State v. McClary*, 2004 ND 98, ¶ 12, 679 N.W.2d 455. An inconsistent verdict is "a situation where the jury has not followed the court's instructions and the verdicts cannot rationally be reconciled." *Id.* at ¶ 6 (cleaned up) (quoting *United States v. Powell*, 469 U.S. 57, 65, 69 (1984)). "Strict standards of logical consistency need not be applied to jury verdicts in criminal cases." *Id.* at ¶ 11 (cleaned up) (quoting *State v. Moran*, 474 N.W.2d 77, 78 (N.D. 1991)). "Reconciliation of a verdict includes an examination of both the law and the case in order to determine whether the verdict is logical and probable, and therefore consistent, or illogical and clearly contrary to the evidence." *State v. Aune*, 2021 ND 7, ¶ 5, 953 N.W.2d 601. "Even if a jury fails to convict a defendant

on a charge having a similar element to a charge on which the defendant is convicted, there is no legal inconsistency if there is substantial evidence to support the charge on which he is convicted." *Id.* at ¶ 5 (quoting *State v. Pavlicek*, 2012 ND 154, ¶ 10, 819 N.W.2d 521).

[¶24] For the charge of reckless endangerment, the amended information alleged Villazana "pointed a firearm at another individual, Jane Doe." For the charge of terrorizing, the amended information alleged Villazana "pointed a firearm at another individual." The charge of reckless endangerment had a specific person, while the terrorizing charge could have applied to Freels or other individuals present during the altercation. The jury instructions reflected the same. However, the jury instructions also included more specific instructions listing the elements of the offenses charged. The instructions more specifically provided:

Reckless Endangerment

A person who creates a substantial risk of serious bodily injury or death to another human being under circumstances manifesting extreme indifference to the value of human life is guilty of Reckless Endangerment. There is a risk if the potential for harm exists, whether or not a particular person's safety is actually jeopardized.

ESSENTIAL ELEMENTS OF OFFENSE

The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:

1) On or about May 4, 2022, in Stark County, North Dakota, the Defendant, Jorge Villazana, created a substantial risk of serious bodily injury or death to Nicole Freels;

2) The Defendant created the risk under circumstances manifesting extreme indifference to the value of human life;

3) The Defendant engaged in the conduct recklessly; and

4) The Defendant did not act in self-defense.

<u>Terrorizing</u>

A person who, with intent to place another in fear for that person's or another's safety, or in reckless disregard of the risk of causing such terror, threatens to commit any crime of violence or act dangerous to human life is guilty of Terrorizing.

ESSENTIAL ELEMENTS OF OFFENSE

The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:

1) On or about May 4, 2022, in Stark County, North Dakota;

2) The Defendant, Jorge Villazana;

3) With intent to place another in fear for that person's or another's safety, or in reckless disregard of the risk of causing such terror;

4) Threatened to commit a crime of violence or act dangerous to human life; and

5) The Defendant did not act in self-defense.

These jury instructions were agreed to by Villazana and became the law of the case. *Aune,* 2021 ND 7, ¶ 7. The verdict form, also agreed to by Villazana, allowed the jury to find Villazana guilty of each of these charges, regardless of use of a weapon. The verdict form completed by the jury provided:

We, the Jury, duly impaneled and sworn in the above-entitled action do find the Defendant, Jorge Villazana:

1. With respect to the offense of "Reckless Endangerment" set forth in the Criminal Information:

_X_Guilty ___Not Guilty

10

1(a). If you found the Defendant guilty of "Reckless Endangerment," did the Defendant in committing "Reckless Endangerment" threaten or menace another with imminent bodily injury with a firearm during the commission of the offense?

_X_Yes ___No

2.    With respect to the offense of "Terrorizing" set forth in the Criminal Information:

_X_Guilty____Not Guilty

2(a). If you found the Defendant guilty of "Terrorizing," did the Defendant in committing "Terrorizing" threaten or menace another with imminent bodily injury with a firearm during the commission of the offense?

___Yes _X_No

[¶25] Considering the district court's instructions and the evidence presented in this case, the jury verdict is not inconsistent. "A jury is presumed to follow instructions given by the trial court." *McClary*, 2004 ND 98, ¶ 17. As to the reckless endangerment charge, Freels and another witness both testified Villazana pointed a firearm at Meschkehurt, then he spun around, pointed the firearm at Freels, pulled the trigger, and Freels was shot in the face. Even if the firearm discharged accidentally, the evidence supports the charge of reckless endangerment with the use of a firearm.

[¶26] The jury found Villazana guilty of terrorizing but determined a firearm was not used in the commission of the offense. The essential elements for terrorizing did not require use of a firearm. The evidence includes testimony that Villazana screamed at and got in the face of Meschkehurt and pointed a handgun at her. The jury's verdict may appear to be logically inconsistent with finding Villazana guilty of reckless endangerment with the use of a firearm. However, a logical inconsistency does not entitle a defendant to a new trial. *McClary*, 2004 ND 98, ¶¶ 8-10. The question is whether the verdict can be rationally explained.

The jury instructions did not require the jury to find a firearm was used to find Villazana guilty of terrorizing. That is the law of the case. The jury could have found Villazana committed terrorizing when he "got in the face" of Meschkehurt and screamed at her or that others at the scene were placed in fear for their own or another person's safety during an altercation involving Villazana which included a crime of violence. It is also possible the jury exercised lenity in finding him guilty of terrorizing, but opted not to include the use of the firearm on the verdict form. We have recognized that juries have historically exercised a sense of lenity in criminal matters, granting defendants leniency for crimes they have committed and for which the evidence is sufficient to sustain. *Id.* at ¶ 10. Because there is substantial evidence to support the charge of terrorizing, there is no legal inconsistency in the jury finding Villazana guilty of terrorizing.

[¶27] The jury followed the district court's instructions, and the verdict can be rationally reconciled; therefore, it is not a legally inconsistent verdict.

IV

[¶28] We do not address other issues raised because they are either inadequately briefed, unnecessary to the decision, or are without merit. The criminal judgment is affirmed.

[¶29] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr